[No. 44811. En Banc. November 2, 1978.]

BILL BREMMEYER, *Petitioner,* v. PETER KIEWIT SONS COMPANY, *Respondent.*

*Robert Lee Ager,* for petitioner.

*Oles, Morrison, Rinker, Pickel, Stanislaw & Ashbaugh,* by *Richard M. Stanislaw* and *Arthur D. McGarry,* for respondent.

STAFFORD, J.—Appellant Bill Bremmeyer, doing business as Bremmeyer Logging Company, appeals a summary judgment dismissing his complaint. We reverse and remand for trial.

The State of Washington awarded respondent Peter Kiewit Sons Company (Peter Kiewit) a prime contract to construct several miles of Interstate 90. The highway right–of–way was overgrown and needed to have the trees and debris cleared before construction could begin. For this purpose, Peter Kiewit subcontracted the necessary clearing operation to Bremmeyer.

Under the written subcontract, Bremmeyer agreed to pay Peter Kiewit $35,000 for the right to fall, yard, buck, load and haul to the mill all merchantable timber within the highway right–of–way. Bremmeyer also agreed to (1) furnish a payment and performance bond; (2) provide liability insurance; (3) build, within the clearing limits, all access roads required for clearing if Peter Kiewit's roads were insufficient; and (4) comply with Peter Kiewit's fire plan which was on file with the United States Forest Service.

Bremmeyer furnished a bond and insurance certificate, paid the $35,000, and began clearing the right–of–way. Before he had completed his performance under the contract the State terminated Peter Kiewit's prime contract. Peter Kiewit, in turn, terminated Bremmeyer's subcontract. Peter Kiewit received $1,729,050 from the State for cancellation costs but tendered Bremmeyer only $38.73 for cancellation of the subcontract.

Bremmeyer filed this action to recover the value of the uncut merchantable timber. Peter Kiewit answered and

then moved for a summary judgment of dismissal asserting Bremmeyer was barred from bringing the action because he was not registered in accordance with RCW 18.27. The affidavits submitted on summary judgment showed (1) Bremmeyer had not registered as a contractor pursuant to RCW 18.27; (2) the subcontract involved the clearing of trees within a highway right–of–way; (3) the subcontract had no direct or incidental fire prevention purpose; (4) the subcontract's sole purpose was to clear timber to facilitate highway construction; and (5) the Department of Labor and Industries (Department) does not require loggers to register under RCW 18.27. In response to the motion Bremmeyer asserted his failure to register did not bar his action because (1) he was not a "contractor" as defined by RCW 18.27.010; (2) loggers were exempt from registration; and (3) his activities were incidental to land clearing for fire prevention purposes and thus exempt from registration under RCW 18.27.090(10).

The trial court found that no genuine issue of material fact existed and *orally* granted Peter Kiewit's motion for summary judgment. Thereafter, Bremmeyer moved to reconsider and set aside the *oral* summary judgment because (1) he had substantially complied with RCW 18.27; (2) the statute was inapplicable to actions between subcontractors and prime contractors; and (3) his activities were exempt from registration under RCW 18.27.090(6) as construction activities upon personal property. As additional evidence Bremmeyer furnished the bond, an insurance certificate, and affidavit showing his reliance upon the Department's policy of exempting loggers from registration, and a letter from the Attorney General's office stating that logging activities per se were exempt from registration.

The trial court refused to consider the additional factual and legal matters and entered its *written* order granting summary judgment of dismissal. Bremmeyer's motion to reconsider was thereafter denied as improper under CR 60(b)(2) and (6).

Bremmeyer appealed, assigning error to the judgment and to the trial court's refusal to consider the additional factual and legal matters submitted with his motion to reconsider. The Court of Appeals considered *all* factual and legal matters presented to the trial court, including those which had been rejected, and affirmed the dismissal. *Bremmeyer v. Peter Kiewit Sons Co.,* 16 Wn. App. 318, 555 P.2d 1183 (1976).

Bremmeyer's petition for review raises five issues. (1) Does RCW 18.27 apply to actions between subcontractors and prime contractors? (2) Was the subcontract one for the "purchase of trees?" (3) Must loggers register under RCW 18.27? (4) Did Bremmeyer substantially comply with RCW 18.27? (5) If Bremmeyer's action is barred by RCW 18.27, is Bremmeyer denied his constitutional right of access to the courts? Inasmuch as our resolution of issue (1) is fully dispositive of this appeal, we need not address the remaining issues.

We first considered whether the legislature intended RCW 18.27 to bar actions by unregistered subcontractors against prime contractors in *Jeanneret v. Rees,* 82 Wn.2d 404, 511 P.2d 60 (1973). On this issue a majority of the court agreed the legislature intended to preclude such actions. However, even among the majority the various rationales utilized to find this intent were hardly unanimous. Some members of the court felt that statute was intended to bar the subcontractor's action because RCW 18.27.090 contained no specific exemption for them. *Jeanneret v. Rees, supra* at 408. Others concluded the plain and unambiguous language of RCW 18.27.080 controlled, requiring a determination that the legislature intended to foreclose the unregistered subcontractor's action. *Jeanneret v. Rees, supra* at 410 (dissenting opinion by Justice Wright).

After careful reexamination of the issue, we are convinced that we can no longer be guided in our interpretation of the reach of RCW 18.27 by relying exclusively upon the specific exemptions contained in RCW 18.27.090 or

upon the sweeping language used in RCW 18.27.080. As we said in *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 420, 486 P.2d 1080 (1971):

> It should be quite obvious that:
> > There are times when even the *literal expression* of legislation may be *inconsistent with the general objectives or policy behind it*, . . .
>
> (Italics ours.) J. Sutherland, Statutes and Statutory Construction § 6006 (Horack 3d ed. 1943).

Continued reliance upon the literal expression of RCW 18.27.080 or RCW 18.27.090 is particularly inappropriate in light of the legislature's amendment to the statute after our divided opinion in *Jeanneret*. In 1973, by an amendment which became effective subsequent to our decision in *Jeanneret*, the legislature declared the purpose underlying the contractor's registration statute. A new section, RCW 18.27.140, now provides:

> It is the purpose of this chapter to afford protection *to the public from* unreliable, fraudulent, financially irresponsible, or incompetent *contractors*.

(Italics ours.) Laws of 1973, 1st Ex. Sess., ch. 161, § 2. *See Murphy v. Campbell Inv. Co., supra* at 421–22; *Stewart v. Hammond*, 78 Wn.2d 216, 219–20, 471 P.2d 90 (1970).

In view of this newly declared statutory purpose and the minimal protections afforded the public by the statute, we are convinced the legislature did not intend to protect prime contractors from actions initiated by unregistered subcontractors. The statutory purpose clearly provides protection *to the public, i.e.*, the customers of building contractors. *See Murphy v. Campbell Inv. Co., supra* at 421–22. In light of the amendment, and considering the judicial history of RCW 18.27, we do not believe the legislature also intended to protect contractors *from each other*.

Our conclusion follows directly from the stated statutory purpose. This purpose is *not* to protect *contractors*. Quite the contrary. The statute is intended to protect the public *from* contractors. RCW 18.27.140. Moreover, the public to be protected *from* contractors are those customers who

themselves are not routinely in the business of acting as "contractors" as defined by RCW 18.27.010. *See also* House Journal, 38th Legislature (1963), at 521–23. If the legislature had intended to protect prime contractors from subcontractors, the statute would have so stated. Furthermore, somewhat more substantial financial responsibility requirements might have been imposed.

That the beneficiaries of the statute are the unsuspecting victims of the contractor is also evident from the safeguards afforded by the statute. As we recognized in *Murphy v. Campbell Inv. Co., supra* at 421–22:

> The crucial devices utilized by the legislature to regulate and restrain unreliable, fraudulent, and incompetent contractors are contained in RCW 18.27.040, requiring a contractor's surety bond; and in RCW 18.27.050, requiring a contractor to obtain public liability and property damage insurance. *These two named devices are designed to provide some protection—albeit minimal— for customers in today's "market place" against the financially irresponsible contractor.*
>
> The additional registration requirement imposed by RCW 18.27.020, is essentially merely an adjunct of, or to better implement, the requirements to insure minimum financial security *for consumers (customers of building contractors). Such filing is designed to give public notice, and thus to aid those persons dealing with contractors* in determining that such contractors have, in fact, met the minimal security and financial responsibility standards imposed by RCW 18.27.040 and 18.27.050.

(Italics ours.) The foregoing safeguards, together with the disclosure requirements required by RCW 18.27.120, can hardly be said to protect prime contractors from unregistered subcontractors.

The legislative intent that these safeguards protect only non–"contractor" customers is also reflected in Representative Andersen's remarks before the House of Representatives when the statute was first enacted:

> This bill simply requires that certain information be filed with the state so it is available to the prospective home

owner or persons dealing with home improvement contracts. Also, the home improvement contractor or other contractor must post very small bonds and have liability insurance.

House Journal, 38th Legislature (1963), at 522.

Our conclusion that the legislature did not intend to bar actions by unregistered subcontractors against prime contractors is also supported by the practicalities of the contracting trade. Members of the trade are in a more nearly equal bargaining position with respect to *each other*. Not only is information concerning financial responsibility and competence readily attainable within the trade, each contractor is knowledgeable concerning the financial protections needed for any particular job involved.

This inter–trade expertise must be contrasted with the consuming public's *lack* of information concerning competence and financial responsibility of the members of the contracting trade. The consumer is not privy to inter–trade information, nor is he necessarily conversant with the specific financial protections necessary for his particular job requirements.

Because of this disparity in information and knowledge, we believe the legislature intended to provide the consumer with at least minimal resources in this respect. Only by providing the statutory safeguards to the consuming, non–"contracting" public is the purpose declared in RCW 18.27-.140 assured. These protections are not necessary for members of the contracting trade when dealing with *each other*.

Having reexamined RCW 18.27 and for the reasons stated herein, we conclude the legislature did not intend RCW 18.27 to bar actions by unregistered subcontractors against prime contractors. Insofar as *Jeanneret* is inconsistent with this opinion, it is overruled. Moreover, because the Court of Appeals relied upon our majority holding in *Jeanneret* in reaching a result contrary to our holding herein, we must reverse the Court of Appeals on this issue.

The Court of Appeals is reversed and this cause is remanded for trial.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied December 14, 1978.