[No. 51883-1. En Banc. March 6, 1986.]

STEWART CARPET SERVICE, INC., *Petitioner,* v. CONTRACTORS BONDING AND INSURANCE COMPANY, *Respondent.*

CREE CONSTRUCTION COMPANY, INC., *Petitioner,* v. ICOM PLUMBING & HEATING, INC., *Defendant,* CONTRACTORS BONDING AND INSURANCE COMPANY, *Respondent.*

*Rigby, Jones & Zuanich,* by *James Rigby,* for petitioner Stewart Carpet Service.

*Ulin, Dann, Elston & Lambe,* by *Garth A. Schlemlein,* for petitioner Cree Construction Co.

*Bobette S. Jones,* for respondent Contractors Bonding and Insurance Co.

*James G. Blair,* for respondent F/M Sales Co.

*Helm, Helm & Lovejoy, P.S.,* and *Charles P. Helm,* for respondent Wing Co.

PEARSON, J.—These cases were consolidated for appeal by the Court of Appeals. The issue in both cases is whether, upon default by a lower–tier subcontractor, an upper–tier general contractor may recover against a contractor's bond

posted by the lower–tier contractor pursuant to the registration of contractors act, RCW 18.27.010 *et seq.*[1] We affirm the decision of the Court of Appeals, holding that an upper–tier contractor cannot reach the proceeds of a contractor's registration bond posted by a lower–tier contractor pursuant to RCW 18.27.040.

The facts in both of these cases were cogently distilled by the Court of Appeals, and are as follows:

### STEWART CARPET

Stewart Carpet Service, Inc., sought to recover against a statutory contractor's bond posted by Steven Glines, d/b/a Fuzzy Side Up. Stewart, the upper–tier general contractor, had subcontracted a floor covering job for a consumer to Fuzzy Side Up, the lower–tier subcontractor, which it negligently performed, forcing Stewart to subcontract the job to another contractor. Fuzzy Side Up then filed a petition in bankruptcy.

Stewart subsequently filed suit against the statutory surety bond which Fuzzy Side Up had posted pursuant to the registration of contractors act. The trial court granted summary judgment in favor of the bond surety, Contractors Bonding and Insurance Company (Bonding Company), holding Stewart was not entitled to recover from the bond proceeds. Stewart appealed to the Court of Appeals, which affirmed the trial court.

### CREE CONSTRUCTION

Cree Construction Company, Inc., the upper–tier general

---

[1] Our designation of contractors as either upper or lower tier is central to our analysis in this decision. The designation is employed to prevent the confusion inherent in the terms "general contractor" and "subcontractor". A contractor can be a "general contractor" for the purposes of RCW 18.27.010, but a "subcontractor" for the purpose of defining his relation to the contractor in privity with the consumer. Under today's decision an upper–tier contractor, usually the one in privity with the consumer, cannot recover against the statutory bond posted by a lower–tier contractor. On the other hand, a lower–tier contractor, usually the one in privity with the upper–tier contractor, can recover against the bond posted by the upper–tier contractor if he otherwise qualifies under RCW 18.27. *See Allied Am. Painting Contractors, Inc. v. Shore*, 40 Wn. App. 783, 700 P.2d 389 (1985).

contractor, sought to recover against the statutory contractor's bond posted by ICOM Plumbing and Heating, Inc., the lower–tier subcontractor, which had breached its contract with Cree to perform work on a Bellevue public works project Cree was building. ICOM also had not paid its materials suppliers, F/M Sales Company, Inc., and the Wing Company (Materials Suppliers).

The Bonding Company tendered the proceeds of ICOM's bond into the registry of the court. The Materials Suppliers intervened in the suit between Cree and ICOM, and the trial court gave Cree priority to the proceeds ahead of the Materials Suppliers. The Materials Suppliers appealed to the Court of Appeals, which reversed the trial court.

## I

The Washington registration of contractors act, RCW 18.27, requires a construction contractor to file a surety bond with the Department of Labor and Industries as a condition precedent to obtaining registration for the conduct of construction activities in Washington. RCW 18.27-.040. If a contractor engages in construction activity without posting the appropriate bond, the Department of Labor and Industries may impose civil and criminal penalties, RCW 18.27.240, and the contractor may be barred from commencing suit in the state courts to recover on a contract claim. RCW 18.27.080. In 1981, RCW 18.27.040 required a "general contractor" to file a bond of $4,000, and required a "specialty contractor" to file a bond of $2,000.[2] The bond filed by Fuzzy Side Up was a general contractor's bond of $4,000. The bond filed by ICOM was a specialty contractor's bond of $2,000.[3]

---

[2]The section subsequently was amended in 1983 to require a general contractor to file a bond of $6,000, and a specialty contractor to file a bond of $4,000.

[3]A "general contractor" is defined as "a contractor whose business operations require the use of more than two unrelated building trades or crafts whose work the contractor shall superintend or do in whole or in part". A "specialty contractor" is "a contractor whose operations . . . do not fall within the foregoing definition of 'general contractor'." RCW 18.27.010.

RCW 18.27.040 identifies the persons who may make claims against these bonds, specifies the procedures for making the claims, and sets forth an order of priority by which claims are to be paid. RCW 18.27.040 provides, in relevant part:

(1) Each applicant shall . . . file . . . a surety bond . . . conditioned that the applicant [1] will pay all persons performing labor, including employee benefits, for the contractor, [2] will pay all taxes and contributions due to the state of Washington, and [3] will pay all persons furnishing labor or material or renting or supplying equipment to the contractor and [4] will pay all amounts that may be adjudged against the contractor by reason of negligent or improper work or breach of contract in the conduct of the contracting business. . . .

. . .

(3) Any person . . . having a claim against the contractor for any of the items referred to in this section may bring suit upon such bond . . .

(4) . . . [When multiple claims against the bond exceed the amount of the bond] claims shall be satisfied from the bond in the following order:

(a) Labor, including employee benefits;

(b) Claims for breach of contract by a party to the construction contract;

(c) Material and equipment;

(d) Taxes and contributions due the state of Washington;

(e) Any court costs, interest, and attorney's fees plaintiff may be entitled to recover.

The parties to this appeal request this court to determine whether the intended beneficiaries of the statutory contractor's bond include upper–tier contractors. Stewart and Cree argue that the bond protects all contractors vis–a–vis each other, entitling them to recover against the bonds posted by Fuzzy Side Up and ICOM, respectively. The Bonding Company and the Materials Suppliers argue that the bond only protects consumers, materials suppliers and lower–tier contractors from upper–tier contractors, and not upper–tier contractors from lower–tier contractors.

## II

■ The function of the court in statutory interpretation is to discover the intent of the Legislature and give effect to that intent. *Wilson v. Lund,* 74 Wn.2d 945, 947–48, 447 P.2d 718 (1968). If a statute is unambiguous, the meaning of the statute must be derived from the actual language of the statute. *In re Lehman,* 93 Wn.2d 25, 604 P.2d 948 (1980). If a statute is amenable to more than one interpretation, the court should adopt the interpretation most consistent with the Legislature's intent. *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982). The intent of the Legislature must be derived from the language of the act as a whole, *Human Rights,* at 121, together with the constructions placed on the statute by this court. *State v. Regan,* 97 Wn.2d 47, 51–52, 640 P.2d 725 (1982).

Cree argues that it is entitled to recover against the statutory bond by virtue of the language in RCW 18.27.040, which permits recovery for "breach of contract in the conduct of the contracting business." According to Cree, it is a beneficiary of the bond because ICOM breached its construction contract with Cree. Stewart argues that it is entitled to recover against the statutory bond for the same reason, but asserts additionally that it is a beneficiary of the bond under the language of RCW 18.27.040 because it performed labor for the contractor, Fuzzy Side Up.

The question, therefore, is what the Legislature meant by "all persons performing labor . . . for the contractor" or by "breach of contract by a party to the construction contract". RCW 18.27.040. The ordinary and obvious meaning of this language, and of the section as a whole, is that the Legislature is focusing on wages and benefits contractors owe to individual laborers, and on the contract between the consumer and the upper–tier contractor.

The only provision in the priority section for labor claims includes "employee benefits", a clear indication that the Legislature is focusing on laborers. The only provision in the priority section which would apply to a consumer's

claim specifies claims for "breach of contract by a party to the construction contract", which must mean the contract between the consumer and a contractor, since the consumer is not a party to any other construction contract. If the contractor does not perform pursuant to the terms of "the contract", clearly the consumer has a right of action against the bond.

Cree and Stewart assert, however, that "the construction contract" also refers to a construction contract between an upper–tier contractor and its subcontractor. Stewart argues that "labor for the contractor" also means labor Stewart had another contractor perform for Stewart so that Stewart could meet its obligation to provide such labor for the consumer. The express legislative intent and developed judicial history of the act preclude these awkward interpretations. Language enacted to protect laborers and consumers *from* contractors cannot also be construed to protect upper–tier contractors from lower–tier contractors.[4]

In 1973 the Legislature amended chapter 18.27 to add RCW 18.27.140, which provided: "It is the purpose of this chapter to afford *protection to the public from* unreliable, fraudulent, financially irresponsible, or incompetent *contractors.*" (Italics ours.) The Bonding Company and the Materials Suppliers argue that RCW 18.27.140 is a legislative directive that the act be interpreted to accomplish its public protection purpose. According to them, "the public" entitled to protection from contractors does not include upper–tier contractors, and therefore upper–tier contractors should not recover against a bond posted for the benefit of "the public" contemplated by the Legislature.

Stewart and Cree, on the other hand, argue that RCW 18.27.140 merely adopted the doctrine of "substantial com-

---

[4]The converse construction, however, is possible, *i.e.*, that the Legislature intended to protect lower–tier contractors from upper–tier contractors. As pointed out by the Court of Appeals in *Allied Am. Painting Contractors, Inc. v. Shore*, 40 Wn. App. 783, 700 P.2d 389 (1985), protection of the lower–tier contractor obviates the possibility that such a contractor would find it necessary to exercise his lien rights against the consumer's property.

pliance", under which a technically unregistered contractor may be permitted access to the state courts to recover construction–related debts if he substantially complied with the registration requirements of the act. *Compare Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971); *Andrews Fixture Co. v. Olin,* 2 Wn. App. 744, 472 P.2d 420 (1970) *and H.O. Meyer Drilling Co. v. Alton V. Phillips Co.,* 2 Wn. App. 600, 468 P.2d 1008 (1970) (substantial compliance cases) *with Stewart v. Hammond,* 78 Wn.2d 216, 471 P.2d 90 (1970) *and Suburban Fuel Co. v. Lamoreaux,* 4 Wn. App. 179, 480 P.2d 216 (1971) (literal compliance cases).

According to Stewart and Cree, RCW 18.27.140 must be interpreted to mean the Legislature only adopted the substantial compliance doctrine, because the language of RCW 18.27.140 mirrors that found in the aforecited substantial compliance cases. Under their argument, the section cannot be construed to exclude contractors from the class of intended beneficiaries under the act. In our opinion, this argument is tenuous at best.

### III

In *Bremmeyer v. Peter Kiewit Sons Co.,* 90 Wn.2d 787, 585 P.2d 1174 (1978), this court analyzed the impact of RCW 18.27.140 upon actions between contractors. In *Bremmeyer,* Bremmeyer brought suit against Peter Kiewit Sons for breach of contract. Both parties were contractors, but Bremmeyer was not registered in accordance with RCW 18.27. The trial court granted a motion for summary judgment in favor of Peter Kiewit Sons, holding that Bremmeyer was barred from bringing the action because he had failed to register. The Court of Appeals affirmed, and this court reversed.

According to the court, the central issue in the case was whether "RCW 18.27 appl[ies] to actions between subcontractors and prime contractors?" *Bremmeyer,* at 790. The court rejected its prior analysis of the issue and looked to RCW 18.27.140 for guidance. The following passage from

*Bremmeyer* clearly defines the court's interpretation of RCW 18.27.140, at least in the context of suits between contractors.

In view of this newly declared statutory purpose and the minimal protections afforded the public by the statute, we are convinced the legislature did not intend to protect prime contractors from actions initiated by unregistered subcontractors. The statutory purpose clearly provides protection *to the public, i.e.,* the customers of building contractors. *See Murphy v. Campbell Inv. Co., supra* at 421–22. In light of the amendment, and considering the judicial history of RCW 18.27, we do not believe the legislature also intended to protect contractors *from each other.*

Our conclusion follows directly from the stated statutory purpose. This purpose is *not* to protect *contractors.* Quite the contrary. The statute is intended to protect the public *from* contractors. RCW 18.27.140. Moreover, the public to be protected *from* contractors are those customers who themselves are not routinely in the business of acting as "contractors" as defined by RCW 18.27.010. *See also* House Journal, 38th Legislature (1963), at 521–23. *If the legislature had intended to protect prime contractors from subcontractors, the statute would have so stated.* Furthermore, somewhat more substantial financial responsibility requirements might have been imposed.

(Last italics ours.) *Bremmeyer,* at 791–92.

The court noted that "[t]he crucial devices utilized by the legislature to regulate . . . contractors" are contractors' surety bonds and liability insurance. According to the court, "[t]he legislative intent that these safeguards protect *only* non–'contractor' customers is also reflected in Representative Andersen's remarks . . . when the statute was first enacted". *Bremmeyer,* at 792. Upon questioning before the House of Representatives, Representative Andersen stated:

This bill simply requires that certain information be filed with the state so it is available to the prospective home owner or persons dealing with home improvement contracts. Also, the home improvement contractor or other

contractor must post very small bonds and have liability insurance.

House Journal, 38th Legislature (1963), at 522.

Cree and Stewart argue that the reference to other "persons" besides homeowners should be interpreted to include contractors. When enacted, however, RCW 18.27.040 made no reference to contractors as intended beneficiaries of the bond proceeds. On the other hand, that section did indicate that materials suppliers and laborers were entitled to the bond's protection. Accordingly, we believe Representative Andersen's use of "persons" is best interpreted to include materials suppliers and laborers, and not upper–tier contractors.

In *International Comm'l Collectors, Inc. v. Carver,* 99 Wn.2d 302, 661 P.2d 976 (1983), this court faced the precise question of whether the public purpose language of RCW 18.27.140 narrowed the intended beneficiaries of a contractor's bond to exclude materials suppliers. In *Carver,* a materials supplier sold materials to a registered contractor who failed to pay for the materials. Contractors Bonding and Insurance Company, one of the respondents herein, argued that the "public" referred to in RCW 18.27.140 consists only of customers of building contractors, thereby abrogating the ability of materials suppliers to bring a claim against a contractor's surety bond. *Carver,* at 305. The materials supplier, however, argued that RCW 18.27-.140 merely adopted the substantial compliance doctrine. This court stated that it "need not determine whether this was, in fact, the Legislature's only goal." *Carver,* at 305.

The court did, however, distinguish *Bremmeyer*'s holding that, based upon the public purpose language in RCW 18.27.140, an unregistered contractor was not barred by RCW 18.27.080 from maintaining suit against another contractor. *Carver,* at 305–06. According to the court, "*Bremmeyer* was limited to deciding what effect RCW 18.27.080 has when contractors sue each other. We did not deal with the effect, if any, RCW 18.27.140 has on any other sections of the act." *Carver,* at 306. Therefore, the question of

whether RCW 18.27.140 affected the scope of RCW 18.27-.040 remains undecided.

This question may never be resolved, as "there is no legislative history whatsoever with regard to the statement of purpose contained in RCW 18.27.140." *Carver,* at 306. Nevertheless, the analysis employed by the court in *Carver* is applicable to the present case, and offers a useful framework for deciding whether upper–tier contractors are intended beneficiaries of statutory surety bonds.

In *Carver,* the court noted that both RCW 18.27.040 and RCW 18.27.140 were before the Legislature during the same session, and were approved by the Governor on the same day. From this, the court concluded that the Legislature could not have intended to repeal RCW 18.27.040, either expressly or impliedly. *Carver,* at 307. Finding that the two provisions could be reconciled, the court concluded that "[i]t stands to reason that the 'public' referred to in RCW 18.27.140 does not mean consumers alone but includes the classes of beneficiaries of the bond *listed* in RCW 18.27.040." (Italics ours.) *Carver,* at 308. Because materials suppliers clearly were listed as intended beneficiaries of the surety bond under RCW 18.27.040, the court concluded that such persons were entitled to recover against the surety bond. *Carver,* at 308.

In applying the same analysis to the present case, two things are clear. First, the public purpose language of RCW 18.27.140 does not, in itself, exclude upper–tier contractors from sharing in bond proceeds. Second, the language, or absence thereof, in RCW 18.27.040 does exclude such contractors from the classes of beneficiaries intended by the Legislature. A reading of RCW 18.27.040 reveals there are four classes of potential beneficiaries of a statutory surety bond: (1) laborers who provided services to the contractor; (2) noncontractor customers of the contractor injured by the contractor's breach of contract; (3) materials and equipment suppliers for payment of materials and equipment; (4) the State of Washington seeking payment of taxes and other contributions. As stated in *Bremmeyer,* at

792, "[i]f the legislature had intended to protect prime contractors from subcontractors, the statute would have so stated." Accordingly, although Stewart and Cree would like to bootstrap themselves into either one or both of the first two classes, we believe such a result would frustrate the Legislature's intent and public policy.

## IV

At least two major policy considerations support a decision denying upper–tier contractors access to the statutory surety bond. The first is the practicalities of the building trade. As noted in *Bremmeyer v. Peter Kiewit Sons Co.*, 90 Wn.2d 787, 793, 585 P.2d 1174 (1978),

> Members of the trade are in a more nearly equal bargaining position with respect to *each other*. Not only is information concerning financial responsibility and competence readily attainable within the trade, each contractor is knowledgeable concerning the financial protections needed for any particular job involved.
>
> This inter–trade expertise must be contrasted with the consuming public's *lack* of information concerning competence and financial responsibility of the members of the contracting trade. The consumer is not privy to inter–trade information, nor is he necessarily conversant with the specific financial protections necessary for his particular job requirements.
>
> Because of this disparity in information and knowledge, we believe the legislature intended to provide the consumer with at least minimal resources in this respect. Only by providing the statutory safeguards to the consuming, non–"contracting" public is the purpose declared in RCW 18.27.140 assured. These protections are not necessary for members of the contracting trade when dealing with *each other*.

In short, members of the building trade can investigate each other's financial background and prior performance and, if not satisfied by such an investigation, require that the other contractor post a performance bond. Neither the courts nor the Legislature need protect such persons or corporations.

The second and more compelling policy consideration is

the effect an upper–tier contractor's access to a surety bond would have on the primary beneficiary of the bond—consumers. In *Carver,* one reason given for permitting materials suppliers to recover against the bond was to reduce a materials supplier's need to exercise its lien rights against the consumer's property. As noted in *Carver,* at 308,

> consumers are actually better protected if materials suppliers and others listed in RCW 18.27.040 are able to collect claims from the bond. If materials suppliers are unable to collect from the bond proceeds, they will exercise their lien rights, foreclosing on the consumer's property. *See* RCW 60.04.010, .120. Consumers would be subject to needless suits because materials suppliers and others would be suing them to foreclose the liens instead of bringing claims against the contractor's bond. Consumers would lose time and have to pay court costs and attorney fees to defend the lien foreclosure actions as well as bringing their own actions against the bond. The consumer would in essence become a buttress between the bonding companies and claims by materials suppliers.

Under a similar line of reasoning, the existence of potential lien rights in others counsels against a decision permitting an upper–tier contractor access to bond proceeds. Because of the priority scheme under RCW 18.27.040, an upper–tier contractor, like Stewart or Cree, would have priority over a materials supplier dealing with the same defaulting subcontractor and therefore could exhaust bond proceeds. The materials supplier, in the absence of another remedy, would be forced to exercise its lien rights against the consumer's property, forcing the consumer to defend a needless suit. Clearly, the better decision from a policy standpoint would be that which avoided such a scenario.

## V

The recent decision of the Court of Appeals in *Allied Am. Painting Contractors, Inc. v. Shore,* 40 Wn. App. 783, 700 P.2d 389 (1985) can be reconciled with our decision today. In *Shore,* the Court of Appeals permitted a lower–tier subcontractor to satisfy its claim from a statutory contractor's bond posted by the upper–tier general contractor.

Under the facts of *Shore,* the subcontractor clearly was "furnishing labor" to the general contractor. Accordingly, the subcontractor falls into one of the designated classes of beneficiaries under RCW 18.27.040.

Furthermore, as noted by the Court of Appeals, the subcontractor had lien rights running against the consumer's property. By permitting the subcontractor to satisfy his claim against the upper–tier general contractor's bond, the Court of Appeals obviated the need for the subcontractor to exercise his lien rights against the consumer. As correctly noted by the court, this result is consistent with the purpose of RCW 18.27.140, to protect consumers from disreputable contractors. Under today's decision, the consumer and all parties below the upper–tier general contractor would be permitted to satisfy claims against the bond posted by the upper–tier contractor. Only the upper–tier contractor is precluded from reaching bond proceeds from bonds posted by lower–tier contractors.

In sum, we affirm the Court of Appeals, holding that an upper–tier general contractor is not an intended beneficiary of a statutory surety bond posted by a lower–tier subcontractor pursuant to the registration of contractors act, RCW 18.27.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.