[No. 8131–8–II.  Division Two.  December 8, 1986.]

JAMES V. FRANK, *Appellant,* v. EDWARD A. FISCHER, ET AL, *Respondents.*

*Steven B. Tubbs* and *Gallup, Duggan, Tubbs & Heurlin* (*Charles L. Kobin* and *Kobin & Kobin,* of counsel), for appellant.

*Alan R. Merkle,* for respondents.

REED, A.C.J.—James V. Frank appeals a summary judg-

ment dismissing his lien foreclosure suit against Edward A. and Mildred M. Fischer, husband and wife.

The issue on appeal may be stated as: Can a homeowner with extensive past experience as a contractor, who employs members of more than one trade in the construction of his personal residence, and generally supervises the project, assert the bar to suit provision of RCW 18.27.080 against a claim of one of the contractors who did not register? We answer in the affirmative, and affirm.

Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979). The uncontroverted facts before the trial court, in the form of affidavits and deposition excerpts, when viewed in the light most favorable to Frank, the nonmoving party, *Ohler,* 92 Wn.2d at 511, are as follows: Frank is a contractor specializing in residential woodwork and carpentry. He is a registered contractor in his home state of Oregon, but not in Washington. Fischer is a resident of Washington, and a former licensed general contractor in the state of California, who retired from that business some 10 years ago and now invests in multi–family residential units.

In February of 1983 Fisher hired Frank, along with other specialists in the residential construction trade, to build a personal residence in Vancouver, Washington. Some of these contractors were registered but some, including Frank, were not. Fischer purchased the materials and generally supervised the project on a daily basis.

Fischer having refused to pay, Frank brought this suit on his contract seeking $32,500 and to foreclose his lien on Fischer's property. Fischer interposed the statutory bar of RCW 18.27.080 and moved for summary judgment, which was granted. Frank appealed.

It is clear that, under a literal reading of RCW 18.27.080,[1] Frank's nonregistration prohibits him from

---

[1]RCW 18.27.080 reads as follows:

bringing this suit against Fischer. Ordinarily, when a statute is unambiguous, there is no room for interpretation. However, our Supreme Court has escaped the literal confines of RCW 18.27.080 by looking to the statute's broad general objective or policy of protecting the public.

In *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971), our Supreme Court held that a contractor who had substantially complied with the statute by securing bonding and insurance was not precluded from suit, despite a lack of registration at the time of contracting. The *Murphy* court found that the owner was fully protected by the bond and insurance and suffered no loss of protection because of the technical failure to register.

In *Jeanneret v. Rees*, 82 Wn.2d 404, 511 P.2d 60 (1973), the court refused to recognize an exception for a "contractor performing work for a member of the same profession". *Jeanneret,* at 408. The argument in *Jeanneret* was that such contractors were not of the class (public) that the Legislature intended to protect. In rejecting this proposition, the court said:

> If it was the intention of the legislature that the statute should not be applicable where work is performed for a member of the same profession, it could have so provided. Where there are express exceptions in a statute, as in the instant case, the statute applies to all cases not excepted, and no other exceptions can be read into the statute.

*Jeanneret v. Rees,* 82 Wn.2d at 408. Justice Finley, concurring in the result, opined that "the statute was not intended or designed to protect *prime* contractors" from suits by their subcontractors. 82 Wn.2d at 409.

More recently, in *Bremmeyer v. Peter Kiewit Sons Co.,*

---

"Registration prerequisite to suit. No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract."

90 Wn.2d 787, 585 P.2d 1174 (1978), Justice Finley's view prevailed and the court, laying emphasis on RCW 18.27-.140,[2] held that "prime contractors" cannot claim protection of the statute against claims of their unregistered subcontractors. In so doing, the court stated:

> After careful reexamination of the issue, [does RCW 18.27 apply to actions between subcontractors and prime contractors?] we are convinced that we can no longer be guided in our interpretation of the reach of RCW 18.27 by relying exclusively upon the specific exemptions contained in RCW 18.27.090 or upon the sweeping language used in RCW 18.27.080. As we said in *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 420, 486 P.2d 1080 (1971):
>
> > It should be quite obvious that:
> >
> > > There are times when even the *literal expression* of legislation may be *inconsistent with the general objectives or policy behind it, . . .*
> >
> > (Italics ours.) J. Sutherland, Statutes and Statutory Construction § 6006 (Horack 3d ed. 1943).
>
> . . .
>
> . . . This [statutory] purpose is *not* to protect *contractors.* Quite the contrary. The statute is intended to protect the public *from* contractors. . . .

*Bremmeyer v. Peter Kiewit Sons Co.,* 90 Wn.2d at 790–91.

> These protections are not necessary for members of the contracting trade when dealing with *each other.*

*Bremmeyer v. Peter Kiewit Sons Co.,* 90 Wn.2d at 793.

Frank seizes on this language to urge that Fischer cannot raise the statutory bar because: (1) he is a "contractor" as defined by RCW 18.27.010,[3] or (2) he is a contractor in fact

---

[2]RCW 18.27.140, a new section adopted in 1973 provides:

"Purpose of Chapter. It is the purpose of this chapter to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors."

[3]RCW 18.27.010, insofar as pertinent here, reads as follows:

"Definitions. A 'contractor' as used in this chapter is any person, firm or corporation who or which, in the pursuit of an independent business undertakes to, or offers to undertake, or submits a bid to, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building, . . . or

and in legal contemplation, because he had extensive experience as such, he bypassed hiring a general or prime contractor, he secured separate bids from the building trades, and he generally supervised the project. We disagree with both propositions.

First, Fischer is not subject to the provisions of RCW 18.27 by virtue of an express exemption. RCW 18.27.090 provides:

Exemptions. This chapter shall not apply to:

. . .

(12) Any person working on his own property, whether occupied by him or not, and any person working on his residence, whether owned by him or not but this exemption shall not apply to any person otherwise covered by this chapter who constructs an improvement on his own property with the intention and for the purpose of selling the improved property;

■ At first blush, it may appear difficult to reconcile the language of the exemption with the statutory definition of contractor. However, it is not impossible. In order to do so, we reject Frank's argument that the exemption's terminology, "working on his own property" and "working on his residence," is meant to describe only that owner who "rolls up his sleeves" and physically performs all the work himself. This would be an unreasonable construction of the exemption, because such an owner is not within the statute's definition of contractor in the first instance. Therefore, something else must have been intended by the exemption. "Statutes must be construed as a whole, and, if possible, effect must be given to each word, phrase, clause and sentence of the act." *McKenzie v. Mukilteo Water Dist.*, 4 Wn.2d 103, 112, 102 P.2d 251 (1940).

---

other structure, project, development, or improvement attached to real estate or to do any part thereof including the installation of carpeting or other floor covering, the erection of scaffolding or other structures or works in connection therewith or who installs or repairs roofing or siding; or, who, to do similar work upon his own property, employs members of more than one trade upon a single job or project or under a single building permit except as otherwise provided herein. . . ."

■ A reasonable interpretation is that the exemption creates two categories of landowners—each of whom employs one or more members of the building trades—so as superficially to bring him within the statutory definition of contractor. Those in the first category have no intent or purpose of selling. They are exempt. Those in the second category do intend or propose to sell. They are not exempt.

Fischer falls within the first category. The only evidence before the trial court was that Fischer had moved to Vancouver to be near his grandchildren and intended the dwelling for his own use. Thus, even though he employed several building tradesmen in the actual construction of his home, he is not a "contractor" under RCW 18.27.

■ Frank's second argument, that *Bremmeyer* excludes Fischer from the protected class because he is a contractor in law and fact, also is off the mark. Frank overlooks language in *Bremmeyer* that we believe limits the breadth of its holding: "Moreover the public to be protected *from* contractors are those customers who themselves *are not routinely in the business of acting as 'contractors'* as defined by RCW 18.27.010", and "[t]hese protections are not necessary for members of the contracting trade when dealing with *each other.*"[4] *Bremmeyer,* 90 Wn.2d at 791–92, 793. (Italics ours.) It must be conceded that Fischer is not a "prime" or "upper tier general" contractor as those terms are used in *Bremmeyer* and *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.,* 105 Wn.2d 353, 715 P.2d 115 (1986). Although he may have had extensive experience in the building trades and was himself, at one time, a general contractor, he was not "routinely" engaged in that business, "as defined by RCW 18.27.010", when he contracted with Frank. Rather, Fischer was dealing with Frank in an isolated transaction as an owner of a homesite, not as a fellow member of the contracting trade.

Nor do we believe that availability of the statute's shield

---

[4]*Bremmeyer* overrules *Jeanneret* to the extent the latter is inconsistent with the *Bremmeyer* holding.

should depend upon a homeowner's personal experience in the construction field, despite *Bremmeyer*'s emphasis on "inter-trade expertise," and the availability within the building fraternity of information concerning competency and financial responsibility. In this respect, professional contractors routinely engaged as such cannot be equated with a homeowner not so engaged, but who may have *some* experience and expertise. If we accept such a thesis, the courts would be called upon to make an *ad hoc* determination in each case where an individual seeks to avoid the cost of securing a general contractor for home construction or improvement and himself employs more than one member of the building trade. The result would be very unequal application of the statute.

As so often has been stated, judicial review of legislation does not carry with it a license to modify or amend legislative enactments. *Murphy v. Campbell Inv. Co.,* 79 Wn.2d at 425 (Stafford, J., dissenting). Any attempt on our part to carry the *Bremmeyer* rationale one step farther, so as to deny the protection of the statute to homeowners such as Fischer, could only rest on speculation and conjecture. Nothing in the statutory scheme suggests that the Legislature intended to exclude such individuals from the class—the public—sought to be protected.

Frank argued in the trial court that estoppel and unjust enrichment should prohibit Fischer from raising the statutory bar. Affidavits were submitted asserting *inter alia* that Fischer knew that Frank was not registered, told him he need not bother to do so, and that Fischer would secure all necessary permits and licenses. Assuming that these defenses are available in law to defeat the statutory ban,[5] these allegations were contradicted by Fischer in his deposition and affidavits, thus creating genuine issues of mate-

---

[5]Our courts consistently have held that the defenses of estoppel and unjust enrichment may not be interposed by a contractor to overcome the statute's bar to suit. *See, e.g., Stewart v. Hammond,* 78 Wn.2d 216, 471 P.2d 90 (1970); *Cameron v. State,* 15 Wn. App. 250, 548 P.2d 555 (1976); *Suburban Fuel Co. v. Lamoreaux,* 4 Wn. App. 179, 480 P.2d 216 (1971).

rial fact not resolvable by summary judgment.

Nevertheless, because neither estoppel nor unjust enrichment is raised or argued in Frank's appellate brief, we will not consider these issues. RAP 10.3(g); *Lassila v. Wenatchee,* 89 Wn.2d 804, 576 P.2d 54 (1978). Fraud in the inducement is raised for the first time in Frank's Statement of Additional Authorities, contrary to RAP 10.3(g) and 10.8. We will consider neither this issue nor Frank's argument that Oregon law should apply to this controversy; that too is raised for the first time on appeal. Oregon law was neither pleaded nor proved in the trial court; it was mentioned only in the context of whether it would apply to a separate action by Frank in Oregon based upon fraud. Under all the circumstances, we must hold that Fischer is entitled to raise the bar of RCW 18.27.080.

We are constrained to observe that, if Frank's allegations be true, the bar of the statute may work a decidedly unjust result in this case. If Fischer did induce Frank's noncompliance with the statute in the manner described, all would agree that a grave injustice results from strict application of the statute. Fischer will have succeeded in transforming the act into "an unwarranted shield for the avoidance of a just obligation." *Andrews Fixture Co. v. Olin,* 2 Wn. App. 744, 750, 472 P.2d 420 (1970). However, this is a matter that must be addressed to the Legislature, not the courts. *Stewart v. Hammond,* 78 Wn.2d 216, 220, 471 P.2d 90 (1970); *In re Estate of Sherwood,* 122 Wash. 648, 655–56, 211 P. 734 (1922); *State v. Olson,* 31 Wn. App. 403, 406, 642 P.2d 410 (1982).

In this vein, we note that the Oregon Legislature, recognizing the inequities of strict enforcement of that state's similar statute, has responded by adding to Or. Rev. Stat. § 701.065 the following: "(2) [a] court may choose not to apply this [bar to suit] if the court finds that to do so would result in a substantial injustice to the unregistered builder." Despite the fact that our case law is rife with observations about the inequities of strict interpretation,

and that the remedies if any lie with the Legislature, our own state Legislature has not responded with a similar escape clause. We can only surmise that the Legislature is content with the act as it stands.

In sum, we hold that because Fischer is not required to register as a contractor under RCW 18.27.010, and because he is not a "prime contractor" as that term is used in *Bremmeyer v. Peter Kiewit Sons Co.*, he is entitled to raise the bar of RCW 18.27.080 against a suit by Frank, a contractor who failed to register under the act. Summary judgment was appropriate.

In the exercise of our discretion, we have determined that each party shall bear his own costs and attorney's fees. It is so ordered.

Judgment affirmed.

ALEXANDER, J., concurs.

PETRICH, J. (concurring)—I concur in the majority's affirmance of the judgment below. However, I must register my disagreement with portions of its holdings.

I agree with the majority when it concludes that notwithstanding Fischer's extensive experience in the building trades, "he was not 'routinely' engaged in that business," as defined by RCW 18.27.010, when he contracted with Frank, and therefore he is not denied the protection of the act under the holding of *Bremmeyer v. Peter Kiewit Sons Co.*, 90 Wn.2d 787, 585 P.2d 1174 (1978). However, the majority's conclusion that Fischer was not a contractor under the act requiring registration is not only dicta but, in my view, is wrong.

There is no question that Fischer employed members of more than one trade to construct or improve a building upon his own property, and thus fit the definition of a contractor in RCW 18.27.010. The statute requires contractors to be registered. RCW 18.27.020.[6]

---

[6]"Registration required—Misdemeanor. It is a misdemeanor for any contractor having knowledge of the registration requirements of this chapter to offer to

Looking at the statutory definition of a contractor and seizing on the words in that section, "except as otherwise provided herein", the majority looks to the exemption in RCW 18.27.090(12) which exempts from the act:

(12) Any person working on his own property . . . *but this exemption shall not apply to any person otherwise covered by this chapter who constructs an improvement on his own property with the intention and for the purpose of selling the improved property*;

(italics mine) and by a tortured interpretation of the legislative intent concludes that the exemption creates "two categories of landowners . . . each of whom employs one or more members of the building trades". Majority, at 139. Those who have no intent or purpose of selling are exempt and those who have such intent or purpose are not exempt.

What the majority overlooks is the fact that the italicized language of the exemption above was not part of the act when it was adopted by the Legislature in Laws of 1963, ch. 77, § 9. It was not until 1967, 4 years later, when the Legislature adopted this additional language in Laws of 1967, ch. 126, § 3. Obviously, then, the Legislature for the 4–year period could not have intended the two categories of landowners as suggested by the majority. What then did the Legislature intend?

In order to answer that question we must resort to a number of well established rules of statutory construction. "In construing statutes, the goal is to carry out the intent of the Legislature." *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The court's interpretation must make the statute purposeful and effective. *Seven Gables Corp. v. MGM/UA Entertainment Co., supra.* "Any statutory interpretation which would render an unreasonable and illogical consequence should be avoided." *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 6. If a statute is unam-

---

do work, submit a bid, or perform any work as a contractor without being registered as required by this chapter."

biguous, the meaning must be derived from the actual language of the statute. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 358, 715 P.2d 115 (1986). Absent statutory definition, words used in a statute are to be given their usual and ordinary meaning. *See Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976). When an act is not plain, clear, and unambiguous, resort to its legislative history is necessary as an aid in determining the scope and purpose of the enactment. *See Washington Fed'n of State Employees, Coun. 28 v. State*, 98 Wn.2d 677, 658 P.2d 634 (1983).

Applying these principles, the court must determine what type of activity engaged in by a landowner on his own property was exempt from the act by RCW 18.27.090(12). There is obviously some difference between one who employs two or more tradespeople to construct, alter or repair structures on his own property as defined in RCW 18.27.010 and one who *works* on his own property. The verb *work* is defined in *Webster's Third New International Dictionary* as "to fashion or create by expending labor or exertion upon . . ." Therefore, the Legislature must have meant the physical exertion of the owner. This view of the legislative purpose or intent is buttressed in part when the Legislature in RCW 18.27.010 excluded an individual who might be skilled in two or more trades or crafts from the classification of a general contractor so long as he "*does all work personally* without employees or other 'specialty contractors'". (Italics mine.) It is obvious that the Legislature has drawn a distinction between one who personally engages in the various types of work and one who hires others to do the same.

The majority might respond by saying that a person working on his own property does not qualify as a contractor in the first place, therefore, there is no need for such an exemption. Not so. An individual working on his own property may well fit the definition of a contractor, absent the exemption, so long as he constructs, alters, or repairs a building or structure *for another*. A property owner who by

his own efforts builds, alters, or repairs a structure on his own property to the specifications and demands of the owner's tenants is obviously doing such work for another. Absent the exemption of RCW 18.27.090(12), such an individual would qualify as a contractor under the act so long as that was part of the individual's business.

There is a more reasonable explanation than that offered by the majority as to what the Legislature had in mind when it qualified the definition of a contractor property owner employing members of more than one trade for work on his property with the words, "except as otherwise provided herein", by reference to the other exemptions in RCW 18.27.090. The construction, repair, or alteration of a building by a person, firm, or corporation on his or its property through the employment of more than one trade would be exempt if the project involved the discovery or production of petroleum or gas, was located within the limits of a site under the legal jurisdiction of the federal government, involved less than $500, or was incidental to the construction or repair of irrigation ditches of regularly constituted irrigation districts.

The majority's version of legislative intent would result in an illogical, if not an absurd, result. For example, an owner of questionable financial responsibility or competence could hire several members of two or more trades to construct a large commercial building on his own property. The owner, having no intent to sell the property, would, under the majority's reasoning, be exempt from the registration, bonding, and insurance requirements under this chapter. In that situation, the acknowledged purpose of the act which is to protect those who furnish labor, materials, or equipment from financially irresponsible and incompetent contractors would be frustrated. "Any statutory interpretation which would render an unreasonable and illogical consequence should be avoided." *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 6.

In sum, after considering the usual and ordinary meaning of the word "work" as used in the statute, the legislative

146

history, and the reasonable and logical consequence of the interpretation, it is obvious that the exemption contained in RCW 18.27.090(12) applies to a person who by his own labor and exertion works on his own property. Fischer's activities were not so restricted, and, in my view, he was required to register under the act and may well have committed a misdemeanor for not registering.

Review granted by Supreme Court March 4, 1987.