**LOST VALLEY TIMBER, INC.,**
**Plaintiff-Appellee,**

v.

**POWER CITY CONSTRUCTION, INC., an Oregon corporation; Power Constructors, Inc., a Kansas corporation; Power Two, an Alaskan joint venture; and Fidelity & Deposit Company of Maryland, as surety of Power Two's payment bond, Defendants-Appellants.**

**No. 85–4381.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1987.

Decided Feb. 4, 1987.

As Amended on Denial of Rehearing
and Rehearing En Banc
March 30, 1987.

Reversed and remanded.

Daniel C. Jacobson and John S. Riper, Seattle, Wash., for defendants-appellants.

Douglas W. Elston and Mark S. Beaufait, Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, FARRIS and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Defendants, Power City Construction, Inc., Power Constructors, Inc., Power Two, and Fidelity & Deposit Co. of Maryland, appeal the denial of their motions and the final judgment. They contend that (1) the plaintiff, Lost Valley, is barred from recovering on its claim because of its failure to comply with the Alaska Contractor Registration Act, and (2) the district court erred by instructing the jury that it could find an implied contract. We agree with the first contention to the extent that Lost Valley contracted for work before registering. We disagree with the latter argument.

## BACKGROUND

Alaska Power Authority, a corporate agency of the State of Alaska, awarded a prime contract for power line construction in the Tyee Lake Hydroelectric Project to Power Two. Power Two is a joint venture composed of its principals, Power City Construction, Inc. and Power Constructors, Inc. All defendants, including the surety Fidelity & Deposit, are referred to as Power Two.

Power Two subcontracted with Lost Valley to perform clearing work on the project. Power Two later directed Lost Valley to perform work outside the scope of the subcontract. The majority of the work was performed on property owned by the federal government. Lost Valley failed to obtain its Alaska license to engage in construction work until shortly before it completed its part of the job.

## STANDARD OF REVIEW

We review de novo the interpretation of state law. *Olympic Sports Products, Inc. v. Universal Athletic Sales Co.*, 760 F.2d 910, 912 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 838 (9th Cir.1986). When applying state law, we are bound by the decisions of the state's highest court. *See Olympic Sports*, 760 F.2d at 913.

## ANALYSIS

### A. ALASKA REGISTRATION ACT

Alaska law states that, unless a contractor falls within an exemption, it is unlawful "to submit a bid or work as a contractor until that person has been issued a certificate of registration by the Department of Commerce and Economic Development." Alaska Stat. § 08.18.011 (1982). If a contractor fails to register, Alaska Statute § 08.18.151 (1982) provides:

> A person acting in the capacity of a contractor may not bring an action in a court of this state for the collection of compensation for the performance of work or for breach of a contract for which registration is required under this chapter without alleging and proving that the contractor was a registered contractor *at the time of contracting* for the performance of the work. (Emphasis added).

Lost Valley asserts four arguments to persuade this court that the Registration Act does not bar its suit: (1) the Act is not applicable to subcontractors; (2) if it is, Lost Valley substantially complied with it; (3) the federal site exemption applies; and (4) the logging exemption applies. We are not persuaded.

First, the Alaska Supreme Court has twice held that subcontractor suits against general contractors are barred by a failure to comply with the Registration Act.

*Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1155 (Alaska 1984); *Sumner Dev. Corp. v. Shivers*, 517 P.2d 757, 761 (Alaska 1974). The district court's reliance on *Bremmeyer v. Peter Kiewit Sons*, 90 Wash.2d 787, 585 P.2d 1174 (1978) is misplaced. Though *Bremmeyer* held that a similar act allowed actions by subcontractors, *Smith*, decided after *Bremmeyer*, reaffirmed that Alaska subcontractor suits are barred by the statute. Lost Valley's action is governed by the Alaska Registration Act.

Second, Lost Valley contends that it substantially complied with the statute. The Alaska Supreme Court held, in *Alaska Protection Serv. v. Frontier Colorcable*, 680 P.2d 1119, 1122 (Alaska 1984), that substantial compliance exists when the contractor affords the other party the effective protection of the statute. This doctrine applies when a contractor is registered, bonded and covered by insurance. *Id.* Lost Valley was neither registered nor bonded until the day before it completed work. Belated registration does not remove the statutory bar. *See Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1155 (Alaska 1984). Lost Valley did not substantially comply with the Registration Act.

Third, Lost Valley argues it is exempted from the registration requirement by Alaska statute § 08.18.161(7) (1982). This exempts from registration "construction, alteration, or repair carried on *within* the boundaries of a site under legal jurisdiction of the federal government." (Emphasis added). Lost Valley's work does not come within the literal language of the statute. Its work was not carried on totally "within" federal boundaries. *See Olsen & Sons Logging, Ltd v. Owens*, 607 P.2d 949, 951 (Alaska 1980).

Lost Valley's fourth contention, that it falls within the logging exemption, is also rejected. It did not perform construction work incidental to logging.[1] Its reliance on

---

1. Alaska Stat. § 08.18.161 (1982) provides in part as follows:

This chapter does not apply to:

. . . . .

*Olsen & Sons Logging, Ltd. v. Owens*, 607 P.2d 949 (Alaska 1980) is misplaced. The primary contract in *Owens* was for logging. Olsen then subcontracted with Owens to drill and shoot rock for logging roads. Here, the prime contract was for power line construction. Even though Lost Valley may have performed logging activities, those were incidental to power line construction, not to logging.[2]

We reverse the decision of the district court. The Alaska Registration Act applies to Lost Valley which is not within the Act's exemptions. It is barred from recovery for all work until it registered. Since it may recover for work contracted for after registration, we next consider the implied contract contention.

## B. IMPLIED CONTRACT

■ Lost Valley contends that extra work performed by it was outside the scope of its contract with Power Two. It maintains that the extra work performed was not covered by the provisions in the subcontract or prime contract. It argues that the issue was properly submitted to the jury because an ambiguity existed concerning what work was subject to provisions in the prime contract. We agree.

If the subcontract unambiguously governs payment for work outside the scope of the contract, the court erred by submitting the implied contract to the jury. *See McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 863 (Alaska 1982);

*Port Valdez Co. v. City of Valdez*, 437 P.2d 768, 771 (Alaska 1968). But if the subcontract ambiguously governs payment for work not specified in the contract, the court properly submitted the issue to the jury. *See Alaska N. Dev. Inc. v. Alyeska Pipeline Serv.*, 666 P.2d 33, 39 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984) (choice between competing inferences in context of interpretation is for the trier of fact when it depends on acceptance of extrinsic evidence).

Three clauses must be interpreted to determine if the extra work provision of the prime contract unambiguously governs payment for this work.

Article I of the subcontract says "[t]he Subcontractor agrees to furnish all material and perform *all work as described in Article II . . .* in accordance with [the subcontract and prime contract]." (Emphasis added).

Article II describes the work governed by the contract.[3] It specifically excluded clearing in some sectors. It also failed to list removal of dangerous trees. Parties who list specific items, without general or inclusive terms, are presumed to exclude unlisted items. *Cf. State Dept. of Revenue v. Alaska Pulp America*, 674 P.2d 268, 275 (Alaska 1983) (statutory interpretation); *see also* A. Farnsworth, *Contracts* 496 (1982) (contract interpretation).

Article VII states that "the Subcontractor shall: (1) Be bound to the Contractor by

---

(14) a person performing construction work incidental to farming, dairying, agriculture, horticulture, stock or poultry raising, mining, logging, fishing, clearing or other work upon the land in rural districts for fire prevention purposes, or access road building, unless the person is a licensee.

**2.** *Owens* cites *Martinson v. Publishers Forest Products Co.*, 11 Wash.App. 42, 521 P.2d 233 (1974), to illustrate the manner in which similar statutes have been construed. This discussion is dictum and does not control our decision. We are guided instead by statutory language requiring that construction activities be "incidental to" the activities enumerated in § 08.18.161(14). Here, Lost Valley performed logging work incidental to construction, not construction work incidental to logging.

**3.** Article II of the subcontract states:

. . . . .

(a) Furnish all labor, equipment, materials, supervision and incidentials necessary to accomplish all clearing work as directed by Power Two, all in complete accordance with the Contract Documents, including Addendum No. 1, No. 2, and No. 3.

(b) Work covered under this Subcontract is called out as Item 20–1.01 [sic], 20–1.02, 20–1.03, 20–1.05, 20–1.06, 20–1.07, 20–1.08, 20–1.09, 20–1.10, 20–1.11, 20–1.12 and the construction of helipads and structure clearing (bubble) as directed by Power Two. Clearing of areas containing TM–16 and TM–16(H) units is not a part of this Agreement except for bubbles and construction of helipads.

the terms of [prime contract and subcontract], and assume toward the Contractor, all of the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner, *as applicable to this Subcontract."* (Emphasis added).

Article VII also provides, *"[i]nsofar as the provisions of the General Contract do not conflict [sic] with the specific provisions herein contained,* they and each of them are hereby incorporated into this Subcontract as fully as if completely written herein." (Emphasis added).

Each of the three clauses contains language limiting the incorporation of the prime contract. This differs from the broad contract language present in *Industrial Indem. Co. v. Wick Const. Co.,* 680 P.2d 1100, 1103–04 (Alaska 1984). The three clauses raise questions as to which prime contract provisions were incorporated into the subcontract. In particular, it is unclear whether the work excluded by the subcontract was subject to the payment provision of the prime contract. Because of conflicting inferences, this issue was appropriately submitted to the jury.

On remand, the finder of fact should determine the amount and value of work, if any, not governed by the original contract, for which Lost Valley contracted after it complied with the Alaska Registration Act. Lost Valley's suit was not barred as to this portion of its work. The district court shall provide the opportunity for a jury determination of these questions.

Reversed and remanded.