760 F.2d 910
 1 Fed.R.Serv.3d 1562
 OLYMPIC SPORTS PRODUCTS, INC., Plaintiff/Appellant,
v.
UNIVERSAL ATHLETIC SALES CO., Universal Gym Equipment Co.,
etc., et al., Defendants/Appellees.
UNIVERSAL GYM EQUIPMENT, INC., Counterclaimant/Appellant,
v.
OLYMPIC SPORTS PRODUCTS, INC., Counterdefendant/Appellee.
 Nos. 83-6332, 84-5736.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1984.
Decided April 22, 1985.
 
 Patricia M. Schnegg, Cynthia A.R. Woollacott, Knapp, Grossman & Marsh, Los Angeles, Cal., for plaintiff, appellant.
 Ronald M. Greenberg, Beverly Hills, Cal., William F. Davis, Santa Monica, Cal., for defendants, appellees.
 On appeal from the United States District Court for the Central District of California.
 Before WALLACE and BOOCHEVER, Circuit Judges, and JAMESON,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Olympic Sports Products, Inc. (Olympic) appeals the dismissal of its claim by the district court for lack of prosecution under section 583(b) of the California Code of Civil Procedure (Deering 1972). Olympic claims that Fed.R.Civ.P. 41(b) governed dismissal and that section 583(b) was therefore inapplicable. Universal Gym Equipment, Inc. (Universal) appeals the district court's dismissal of its counterclaim on the same ground. Olympic and Universal further assert that if section 583(b) did govern dismissal the court's determination that their claims warranted dismissal constituted an abuse of discretion.
 
 
 2
 We hold that federal rule 41(b) governs the question of dismissal and that the district court erred in applying the state statute instead of the federal rule. Because section 583(b) was not applicable we need not address whether dismissal of Olympic's claim and Universal's counterclaim under that statute was erroneous.
 
 FACTS
 
 3
 On March 1, 1978, Olympic, appellant/counter-appellee, a distributor of athletic equipment for appellee Whittaker and appellee/counter-appellant Universal, filed a diversity action in district court against Whittaker and Universal alleging breach of contract and fraud. Olympic alleged that appellees were secretly profiting by overstating freight charges on athletic equipment. Universal counterclaimed for contract damages on the ground that Olympic owed it money for goods purchased. The prolonged procedural history of this case is summarized in Appendix A.
 
 
 4
 On March 1, 1983, the complaint had been filed for five years. Olympic and Universal moved for a pretrial conference on May 5, 1983. Whittaker opposed the motion and on May 27, 1983, moved to dismiss the action pursuant to California Code of Civil Procedure section 583(b) and rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 5
 Hearing on the motions was, at Whittaker's request, continued to June 20, 1983, at which time the court tentatively ruled that the case be dismissed pursuant to section 583(b), but took the matter under submission. On September 14, 1983, the court issued its order of dismissal. Two weeks later it dismissed the counterclaim on the same ground.
 
 
 6
 Olympic appealed, and Universal filed a separate counterappeal. The cases were consolidated for argument in this court.
 
 
 7
 Olympic and Universal contend that Fed.R.Civ.P. 41(b), rather than section 583(b) of the California Code of Civil Procedure, governs dismissal of diversity suits for lack of prosecution, and that the district court erred by applying section 583(b). Although Universal is an appellee with Whittaker in the appeal brought by Olympic, it is not opposing Olympic's arguments on appeal.
 
 
 8
 Whittaker asserts that rule 41(b) and section 583(b) differ in that rule 41(b) governs discretionary dismissal and section 583(b) governs mandatory dismissal. Whittaker concludes that because the federal rule does not address mandatory dismissal, Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires us to apply California law. Whittaker further argues that section 583(b), because it is mandatory, is a statute of limitations, and that Supreme Court precedent mandates the application of state statutes of limitations in diversity suits.
 
 DISCUSSION
 A. Standard of Review
 
 9
 Whether state or federal law applies in a diversity action is a question of law, see Alonzo v. ACF Property Management, Inc., 643 F.2d 578, 579-80 (9th Cir.1981), which we review de novo, Miller v. United States, 587 F.2d 991, 994 (9th Cir.1978). Our de novo review extends to the district court's construction of state law. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) (overruling prior practice of deferring to district court's interpretation of the law of the state in which it sits). Although we are not bound by the district court's construction of state law, we are bound to follow the decisions of a state's highest court in interpreting that state's law. Aydin Corp. v. Loral Corp., 718 F.2d 897, 904 (9th Cir.1983).
 
 B. The Erie and Hanna Analyses
 
 10
 We note at the outset that this court has already considered whether Erie requires federal courts to enforce section 583(b) in diversity suits. In Nealey v. Transportation Maritima Mexicana, S.A., 662 F.2d 1275, 1278 n. 5 (9th Cir.1980), we stated that rule 41(b), not section 583(b), governed dismissal for lack of prosecution in diversity suits. At oral argument of Nealey, however, the party opposing the enforcement of federal law conceded its applicability; the court's statement is dicta. We therefore proceed to analyze whether the federal rule or a state law governs dismissal here.
 
 
 11
 In 1938, the Supreme Court departed from precedent to rule that except in matters governed by the United States Constitution or acts of Congress, federal courts must apply state law in diversity suits. Erie, 304 U.S. at 78, 58 S.Ct. at 822 (construing The Federal Judiciary Act of 1789, ch. 20, Sec. 34, 1 Stat. 73, 92 (Rules of Decision Act) (current version at 28 U.S.C. Sec. 1652 (1982) ) ). The Rules of Decision Act then provided that the "laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Prior to Erie, the Court had interpreted the Act as requiring federal court application only of state statutes and local decisions concerning real property, not of state decisional law. Swift v. Tyson, 41 U.S. (16 Pet.) 1, 18, 10 L.Ed. 865 (1842). Under the Swift doctrine, federal courts assumed the power in diversity suits to decide issues of common law, such as tort principles or the interpretation of contracts. See Erie, 304 U.S. at 71, 74-76, 58 S.Ct. at 818, 820-822.
 
 
 12
 Erie repudiated this doctrine and held that state decisional law is entitled to respect equal to that accorded to state statutes. Id. at 78-79, 58 S.Ct. at 822-823. Neither Congress nor the federal judiciary has the constitutional power to declare substantive rules of common law for the states. Id. at 78, 58 S.Ct. at 822. Thus any application of the Rules of Decision Act which invades that substantive province must be unconstitutional. Id. at 79-80, 58 S.Ct. at 822-823. Underlying the Court's decision was its recognition that if the plaintiff, by choosing a federal rather than state forum, could also choose to have federal law rather than state law apply, injustice and confusion would result. Id. at 74-77, 58 S.Ct. at 820-822.
 
 
 13
 The Court subsequently indicated that the choice of law cannot be resolved simply by labeling a question substantive or procedural. Guaranty Trust Co. v. York, 326 U.S. 99, 108-10, 65 S.Ct. 1464, 1469-70, 89 L.Ed. 2079 (1945). According to York, the core policy of Erie is that plaintiff should not be able to choose a different outcome for a lawsuit by filing in federal court rather than state court. Under this outcome-determination test, York held that a state statute of limitations controlled in a diversity suit based on a state-created right. If the suit would be barred in state court when filed, it must be barred in federal court. Statutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts. Id. at 109-10, 65 S.Ct. at 1469-70.
 
 
 14
 The Court reiterated its respect for state statutes of limitations in Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). The federal rules of procedure tolled the statute of limitations upon filing of the complaint; the applicable state rule tolled the statute upon service. Because the state itself treated the service rule as an integral part of its statute of limitations, Ragan held that the state tolling rule must control. Id. at 532-34, 69 S.Ct. at 1234-35.
 
 
 15
 Erie and its progeny, however, are only one of two lines of cases governing choice of law in diversity suits. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court traced the development of a parallel series of precedents exemplified by Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), and explained when each line controls. The Erie analysis, based upon the Rules of Decision Act, applies when no federal rule directly addresses the situation. Hanna, 380 U.S. at 469-71, 85 S.Ct. at 1142-44. If both a state rule and a federal rule cover the situation, Hanna calls for a different analysis, based on the Rules Enabling Act, 28 U.S.C. Sec. 2072 (1982).
 
 
 16
 When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.
 
 
 17
 Hanna, 380 U.S. at 471, 85 S.Ct. at 1144.
 
 
 18
 The Rules Enabling Act authorizes the Supreme Court to prescribe procedural rules for the federal judiciary. The Act was passed pursuant to Congress' constitutional power to establish a federal court system. See U.S. Const. art. III, Sec. 1. The power to establish a court system necessarily encompasses the power, which Congress has delegated to the Supreme Court, to prescribe housekeeping rules for that system. Hanna, 380 U.S. at 472, 85 S.Ct. at 1144. The Enabling Act does contain a self-limiting clause: the rules of procedure "shall not abridge, enlarge or modify any substantive right." Therefore the test for the validity of a federal rule of procedure is whether the rule regulates "judicial process for enforcing rights and duties recognized by substantive law." Sibbach, 312 U.S. at 14, 61 S.Ct. at 426 (quoted in Hanna, 380 U.S. at 464, 85 S.Ct. at 1140).
 
 
 19
 A court should not ignore Erie principles when testing a federal rule under Hanna. Hanna, 380 U.S. at 473, 85 S.Ct. at 1145; see also Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 720-23 (1974) (suggesting that this second analytical step, which the Hanna Court derives from Erie and other decisions based on the Rules of Decision Act, would more properly be based on the Rules Enabling Act provision that "[s]uch rules shall not abridge, enlarge or modify any substantive right"). In analyzing the clash between a state and a federal rule under Erie and York, however, a court should note that every procedural rule may, at some point in litigation, be outcome-determinative, for the failure to follow a court's procedural rules may result in the dismissal of a claim, defense, or entire lawsuit. See Hanna, 380 U.S. at 468-69, 85 S.Ct. at 1142-43. Therefore, the court should not blindly follow York and ask if application of the federal rule will determine the outcome of the controversy. Rather, the court should look at the rule in light of the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hanna, 380 U.S. at 468, 85 S.Ct. at 1142. The proper query is whether the difference between the two rules would be relevant to plaintiff's initial choice of a forum. See id. at 469, 85 S.Ct. at 1142.
 
 
 20
 Our analysis therefore must have several steps. First, we must determine if the federal rule and state rule are actually coextensive. If the federal rule does not address the situation, there would be no conflict between state and federal rules. We would then apply the Erie analysis to determine if the federal court should enforce the state rule. If the federal rule does address the situation, there would be an unavoidable conflict between the state and federal rules. We would then apply the Hanna analysis: if the federal rule is within the scope of constitutional power and the Rules Enabling Act, it applies unless the Erie considerations are so strong that they can justify interrupting the normal function of the federal court processes. See Ely, supra, at 720 (characterizing Hanna as holding that the Enabling Act "should be read to protect the prerogatives of state law against incursions by a Federal Rule with somewhat less vigor than that with which the Rules of Decision Act protects them in the absence of such a Rule").
 
 
 21
 1. Are the federal and state rules coextensive?
 
 
 22
 Fed.R.Civ.P. 41(b) provides that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." Rule 41(b) is based on four "conflicting policies: on the one hand, the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to defendants from delay; on the other hand, the policy favoring disposition of cases on their merits." Citizens Utilities Co. v. AT & T, 595 F.2d 1171, 1174 (9th Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979). This court has previously inferred from the first two policies that rule 41(b) is "in large part a housekeeping measure." Nealey, 662 F.2d at 1279. The other two policies reflect an interest in fairness to the litigants, and thus in considering dismissal under the rule the courts will consider whether the plaintiff has prosecuted the action diligently and to what extent any delay has prejudiced the defendant. See id. at 1279-81. The decision to dismiss under rule 41(b) is within the discretion of the district court. Id. at 1278; Citizens Utilities, 595 F.2d at 1174.
 
 
 23
 California Code of Civil Procedure section 583(b) provides:
 
 
 24
 Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended.
 
 
 25
 Like rule 41(b), section 583(b) dismissal for failure to prosecute is based on dual policy considerations: to encourage speedy litigation and decrease state trial court case backlog, General Motors Corp. v. Superior Court, 65 Cal.2d 88, 91, 416 P.2d 492, 495, 52 Cal.Rptr. 460, 463 (1966), and to protect defendants from indefinite delay during the pendency of an action, Moran v. Superior Court, 35 Cal.3d 229, 237, 673 P.2d 216, 221, 197 Cal.Rptr. 546, 551 (1983). Whittaker argues, however, that section 583(b) differs in scope from rule 41(b) in that section 583(b) provides for mandatory dismissal, whereas 41(b) provides for discretionary dismissal. On the basis of this alleged difference, Whittaker contends that the federal rule does not address the situation governed by the state rule, and that therefore the Erie analysis applies.
 
 
 26
 In determining the scope of section 583(b), we are bound by the California Supreme Court's interpretation of the section. Aydin, 718 F.2d at 904. The California high court has repeatedly held that although the language of section 583(b) is mandatory, its application is discretionary. See, e.g., Moran, 35 Cal.3d at 237-39, 673 P.2d at 221-23, 197 Cal.Rptr. at 551-52; Hocharian v. Superior Court, 28 Cal.3d 714, 719-23, 621 P.2d 829, 831-34, 170 Cal.Rptr. 790, 792-95 (1981) (discussing section 583(b) en route to construing section 581, and emphasizing parties' diligence in section 581 analysis). Moran notes the development of exceptions to the rule's mandatory language and the evolution of those exceptions into the current standard of "reasonable diligence in prosecuting [a] case." Moran, 35 Cal.3d at 237-38, 673 P.2d at 221-22, 197 Cal.Rptr. at 551-52.
 
 
 27
 Accepting the California court's interpretation, we find that both section 583(b) and rule 41(b) are discretionary dismissal statutes under which the trial court considers the housekeeping interests of the court and the reasonable diligence displayed by the parties. We therefore reject Whittaker's argument that the rules differ in scope, and find that the Hanna analysis, rather than the Erie analysis, is applicable here.
 
 2. The Hanna analysis
 
 28
 Under Hanna, our first step ordinarily would be to determine whether this rule is within the limits of Congress' constitutional power and the Rules Enabling Act. The parties, however, have not attempted to argue that the rule is invalid for either reason. We therefore proceed to consider whether, despite the federal rule's validity and applicability, Erie considerations require us to enforce the state rule in its place.
 
 
 29
 We first look to the policy underlying Erie: the avoidance of forum-shopping and unequal administration of justice. The application of both rule 41(b) and section 583(b) depend on the post-filing conduct of all the parties and the court. We find it difficult to conceive that a plaintiff, before filing a lawsuit, might choose a federal forum rather than a state forum in the expectation that rule 41(b) would lead to a different outcome. Forum-shopping concerns are therefore inapplicable here.
 
 
 30
 We also reject Whittaker's argument that section 583(b) is a statute of limitations and that Ragan dictates that we enforce it in federal court. Initially we note that the section regulates conduct in prosecuting a suit rather than barring commencement of a stale action. Whittaker bases its argument on a California Supreme Court case which notes that some of the policies underlying section 583(b) are the same as the policies behind statutes of limitations. Crown Coach Corp. v. Superior Court, 8 Cal.3d 540, 546, 503 P.2d 1347, 1350, 105 Cal.Rptr. 339, 342 (1972). Nothing in that case, however, nor in any other decision of the California Supreme Court cited to us, indicates that the California court considers section 583(b) a statute of limitations. On the contrary, as discussed above, we find that the California court interprets section 583(b) as providing for discretionary dismissal based on considerations of judicial efficiency and fairness to the parties. We therefore conclude that rule 41(b), rather than section 583(b), applies in diversity actions.
 
 
 31
 The district court dismissed Olympic's complaint and Universal's counterclaim under section 583(b). Because rule 41(b), not section 583(b), governs dismissals for lack of prosecution in diversity suits in federal court, both dismissals were erroneous. The decisions of the district court as to Olympic's claim and Universal's counterclaim are
 
 
 32
 REVERSED and REMANDED.
 
 APPENDIX A
 
 33
 The complaint was filed March 1, 1978. The initial pretrial conference set for April 9, 1979, was, by stipulation, continued to July 9, 1979, and then, on behalf of Whittaker, set for November 19, 1979. Upon the parties' announcement of their intent to file motions for summary judgment, the court ordered a continuance to January 21, 1980. The conference was further continued to February 11, 1980, pursuant to motions by the court. All parties then filed motions for summary judgment, and Whittaker moved for leave to amend its answer and to file a counterclaim. On February 11, 1980, all motions were heard and taken under submission.
 
 
 34
 Approximately ten months later, in December 1980, the court denied all motions for summary judgment, and granted Whittaker leave to file a first amended answer and counterclaim. At this point, although the case had been pending for two and one-half years, Whittaker introduced several new issues.
 
 
 35
 On April 22, 1982, Olympic and Universal moved to set a date for a pretrial conference. They were opposed by Whittaker which moved to dismiss Olympic's claim pursuant to Fed.R.Civ.P. 41(b). The motions were heard on May 17, 1982, and the pretrial conference continued to June 14, 1982, and then to June 21, 1982.
 
 
 36
 On June 21, 1982, when the motions were finally heard, Whittaker's rule 41(b) motion to dismiss was denied and the pretrial conference was again continued when Whittaker expressed the need to conduct further discovery.
 
 
 37
 On March 1, 1983, the complaint had been filed for five years. Olympic and Universal moved for a pretrial conference on May 5, 1983. Whittaker opposed the motion and on May 27, 1983, moved to dismiss the action pursuant to California Code of Civil Procedure section 583(b) and rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 38
 Hearing on the motions was, at Whittaker's request, continued to June 20, 1983, at which time the court tentatively ruled that the case be dismissed pursuant to section 583(b), but took the matter under submission. On September 14, 1983, the court issued its order of dismissal. Two weeks later it dismissed the counterclaim.
 
 WALLACE, Circuit Judge, dissenting:
 
 39
 I dissent because the majority incorrectly interprets the California law as to the scope of Cal.Civ.Proc.Code Sec. 583(b) (West 1976), which was superseded by Cal.Civ.Proc.Code Secs. 583.310-.360 (West Supp.1985) subsequent to the district court's decision.
 
 
 40
 The majority reaches its result by concluding that Fed.R.Civ.P. 41(b) and section 583(b) directly conflict. Rule 41(b) is clearly discretionary regarding dismissal for failure to prosecute. The majority advises us that while the language of section 583(b) requires mandatory dismissal after five years' failure to prosecute, California courts have interpreted this section to be discretionary. See at 915. Moreover, the majority finds that California courts have never equated section 583(b) with statutes of limitations. I disagree with these conclusions.
 
 
 41
 Under Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), a federal procedural rule only preempts a state rule if the two rules directly conflict. See Walker v. Armco Steel Corp., 446 U.S. 740, 749, 100 S.Ct. 1978, 1984, 64 L.Ed.2d 659 (1980) (Walker ); Alonzo v. ACF Property Management, Inc., 643 F.2d 578, 580 (9th Cir.1981). The question is whether the federal rule is broad enough to control; if so, Hanna 's preemption applies. See Walker, 446 U.S. at 749-50 & n. 9, 100 S.Ct. at 1984-85 & n. 9. Rule 41(b), permitting discretionary dismissals, certainly conflicted with former Cal.Civ.Proc.Code Sec. 583(a) (West 1976), which permitted discretionary dismissals only after two years from filing. There is no federal rule, however, corresponding to section 583(b). Moreover, section 583(b) did not act to limit the availability of rule 41(b) dismissals. The sole difference is that after five years, section 583(b) deprives a plaintiff of his cause of action. Thus, there is no direct conflict requiring Hanna analysis.
 
 
 42
 When there is no direct conflict, the proper analysis is to examine the importance of the policies behind the state rule. See Walker, 446 U.S. at 752-53, 100 S.Ct. at 1986. Here, California has expressed strong state policies supporting section 583(b), reflected by both precedent and legislative history. At the same time, there are no substantial federal interests at stake which dictate the majority's result.
 
 
 43
 I disagree with the majority's suggestion that section 583(b) is discretionary. The cases cited by the majority fail to support this construction of the statute. Those cases instead hold that there is a limited implied exception to the applicability of section 583(b) when it would be "impossible, impracticable or futile" for plaintiff to go to trial, despite the exercise of "reasonable diligence in prosecuting his or her case." Moran v. Superior Court, 35 Cal.3d 229, 238, 197 Cal.Rptr. 546, 551-52, 673 P.2d 216, 222 (1983) (Moran ). Thus, the standard is not mere "reasonable diligence," as suggested by the majority, see at 915, but rather impossibility in conjunction with reasonable diligence. If any discretion exists, therefore, it is confined within these narrow limits. The majority's reliance on Hocharian v. Superior Court, 28 Cal.3d 714, 170 Cal.Rptr. 790, 621 P.2d 829 (1981), which construed only Cal.Civ.Proc.Code Sec. 581 (West 1976 & Supp.1985), is particularly troublesome in light of the fact that Hocharian was explicitly repealed by statute. See Moran, 35 Cal.3d at 243, 197 Cal.Rptr. at 555, 673 P.2d at 225 (Kaus, J., concurring) (observing that the legislation repudiated Hocharian ); Cal.Civ.Proc.Code Sec. 583.240 law revision commission comment (West Supp.1985).
 
 
 44
 My analysis of the California law is bolstered by the California legislature's recognition of the limited nature of these implied exceptions. Their codification in the new statute emphasizes--in harmony with precedent interpreting section 583(b)--that dismissal after five years is "mandatory and ... not subject to extension, excuse, or exception except as expressly provided by statute." Cal.Civ.Proc.Code Sec. 583.360(b) (West Supp.1985) (emphasis added). The only exceptions are if plaintiff shows that going to trial would have been "impossible, impracticable, or futile," id. Sec. 583.340(c), or unless the court's jurisdiction was suspended or the trial was stayed or enjoined. Id. Sec. 583.340(a), (b). One cannot read any discretion into this language. My analysis is also supported by the consistent statutory scheme of separating discretionary dismissals, see former section 583(a) and new sections 583.410-.420, from mandatory dismissals, see former section 583(b) and new sections 583.340-.360.
 
 
 45
 Moreover, California courts have consistently analogized section 583(b) to statutes of limitations, contrary to the majority's conclusions. See, e.g., Crown Coach Corp. v. Superior Court, 8 Cal.3d 540, 546, 105 Cal.Rptr. 339, 342, 503 P.2d 1347, 1350 (1972) ("The dismissal statutes, like statutes of limitation," provide protections for defendants.) (emphasis added); General Motors Corp. v. Superior Court, 65 Cal.2d 88, 91, 52 Cal.Rptr. 460, 462, 416 P.2d 492, 494 (1966) ("The purposes served by [section 583(b) ] are somewhat analogous to those underlying statutes of limitation."); Lockhart-Mummery v. Kaiser Foundation Hospitals, 103 Cal.App.3d 891, 896, 163 Cal.Rptr. 325, 328 (1980) (treating section 583(b) as a statute of limitations).
 
 
 46
 A statute of limitations requires a plaintiff to present his claim within a reasonable period of time. This section extends that policy by further requiring a plaintiff to remain diligent in prosecuting his claim. Both limitations therefore act as qualifications on a plaintiff's ultimate right of redress, terminating that right at different stages. In both instances, the interests of defendants are protected. Absent a showing of impracticability, a defendant has a substantive right to have an action dismissed after five years. This can hardly be labeled merely a "procedural" right. Indeed, unless section 583(b) is enforced, the policies behind statutes of limitations could be defeated by merely filing suit and then failing to prosecute for extended periods of time. Where is the protection for the defendant? California explicitly ensured it by section 583(b).
 
 
 47
 A plaintiff's cause of action is created by state law, and must therefore be measured by that same state law, see Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520 (1949), and "[i]t accrues and comes to an end when local law so declares." Id. As the majority already states, "[s]tatutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts." At 913 (emphasis added). Here, a plaintiff's cause of action remains alive only for five years following its filing, absent a showing that it was impossible to bring the case to trial. Enforcement of section 583(b) would result in no major disruption in the proceedings of the federal courts. Therefore, it should be enforced.
 
 
 
 *
 Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation