**CINCINNATI MICROWAVE, INC., Plaintiff,**

*v.*

**James W. WILSON, Carmen O. Wilson, Robert N. Covarrubias, Alvin B. Tamura and Yukio Tamura, Defendants.**

No. CV–S–87–311–PMP.

United States District Court, D. Nevada.

Feb. 13, 1989.

Bradley J. Richardson, Wiener, Waldman, Gordon & Silver, Las Vegas, Nev., Joseph J. Dehner, Michael L. Cioffi, Robert Scott Kaiser, Frost & Jacobs, Cincinnati, Ohio, for plaintiff.

Kirk Harrison, Melvin D. Close, Jones, Jones, Close & Brown, Las Vegas, Nev., for defendants.

## ORDER DISMISSING DEFENDANTS' FIRST & SIXTH COUNTERCLAIMS

PRO, District Judge.

In 1987, Plaintiff Cincinnati Microwave, Inc. ("CMI") filed a Complaint (# 1), against Defendants named therein (collectively, "Wilson"), alleging fraud and breach of warranty in connection with the asset purchase agreement (the "Agreement") entered into by and between CMI and Wilson Microwave Systems, Inc. ("WMS") and Wilson. On September 14, 1987, Wilson filed an Answer, Counterclaim and Third Party Complaint (# 16), alleging, *inter alia*, the three counterclaims which are the subject of this order.

As counterdefendant, CMI filed a "Motion to Dismiss, for Partial Summary Judgment, or for Judgment on the Pleadings on Defendants' First, Sixth and Seventh Counterclaims" (# 54) on August 11, 1988. By Order (# 59) dated September 29, 1988, this Court vacated its previous Order (# 58) of September 27, 1988, which had granted CMI's Motion to Dismiss. Pursuant to this Court's Order, on November 4, 1988, Wilson filed a Memorandum in Opposition to CMI's Motion to Dismiss (# 60).

For the reasons discussed herein, CMI's Motion to Dismiss is granted regarding Wilson's First and Sixth Counterclaims, but CMI's motion regarding Wilson's Seventh Counterclaim is denied.

### BACKGROUND AND PLEADING REQUIREMENTS

This Court's jurisdiction is founded on diversity of citizenship among the parties. 28 U.S.C. § 1332. Consequently, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must apply the substantive law of Nevada. It is well established that when considering state substantive law, federal courts are bound by the state high court's decisions. *Lost Valley Timber v. Power City Const., Inc.*, 809 F.2d 590, 592 (9th

Cir.1987); *Olympic Sports Products, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 913 (9th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986).

For purposes of CMI's Motion to Dismiss, the factual allegations of Wilson's Counterclaims must be presumed as true, and this Court must draw all reasonable inferences in favor of Wilson, the non-moving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987); *Edgar v. Wagner,* 101 Nev. 226, 699 P.2d 110, 111 (1985). The issue is not whether Wilson ultimately will prevail, but whether he is entitled to offer evidence to support his counterclaims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 90 (1974). Consequently, this Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff [in this case, defendant/counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed. 2d 474 (1981).

## FIRST COUNTERCLAIM FAILS:

## NO IMPLIED COVENANT BY CMI IN AGREEMENT

Wilson's first counterclaim alleges that pursuant to the terms of the Agreement, CMI entered into certain covenants which, if honored, would preserve the financial performance of WMS following its purchase by CMI. This, in turn, would presumably maintain profits so that CMI's contingent payments to Wilson would not vary from past years.[1]

Wilson's counterclaim fails as a matter of law. The Agreement expresses the par-

ties' final expression on CMI's acquisition of WMS. *See* Restatement, Second, Contracts § 209(3). Accordingly, the interpretation of the terms of the Agreement is to be determined by this Court as a matter of law. *Id.,* § 212(2). The covenants allegedly implied by the Agreement, as contained in the first counterclaim, are in fact merely restatements of the explicit contractual provisions which bind Wilson, as *seller,* to maintain the status quo during the period between the execution of the Agreement and the closing of the transaction, at which time the corporate assets were transferred. Agreement, Article V (Covenants), § 5.1, attached to # 54, as Exhibit A.

Such covenants are standard in commercial purchase-sale agreements for the obvious purpose of precluding the corporate seller from stripping the corporation of its assets or diminishing its good will prior to the actual transfer to purchaser. Were such explicit covenants not included, the purchaser would have no protection that it would receive the very enterprise for which it is contracting to purchase.

Under the reverse circumstances, however, the purchaser need not covenant to maintain the corporate status quo, even if a portion of the consideration for the purchase is a specified portion of the future profits. Absent explicit contractual provisions to the contrary, this Court cannot expect that as purchaser, CMI would contractually preclude itself from the opportunity to conduct the business of its newly acquired entity in a manner in accordance with its own business judgment.

In its Opposition to the Motion to Dismiss, Wilson acknowledges that the covenants contained in the Agreement which are restated in Wilson's first counterclaim govern only Wilson's duties to CMI in the context of transferring control of WMS to CMI, but asserts that Wilson's covenants impliedly create a correlative duty in CMI:

> While the covenants·expressly assented to by [Wilson] covered *their* duties in

---

1. Supplemental to the purchase price of WMS, the Agreement provides that CMI will pay Wilson a certain percentage of net profits ("contin-

gent payments") earned during the three fiscal years subsequent to the closing of the transaction.

transferring *control* of WMS, a concomitant duty arose in CMI; to wit, CMI impliedly covenanted to conduct business in a manner consistent with their good faith agreement to pay [Wilson] sums based on [WMS]'s future financial performance.

In agreeing to pay [Wilson] contingent sums based upon the financial performance of [WMS] in future years, CMI undertook to perform an essential part of its obligations under the asset purchase agreement *after* WMS was transferred to its control. As a consequence, CMI impliedly covenanted to maintain, conserve, and prudently manage its new acquisition's assets and infrastructure, in the interests of fairness to [Wilson]. CMI thereby impliedly covenanted to conduct business in the same or similar way as [Wilson] did in the express manner of Article V, Section 5.1 [of the Agreement]. # 60 at 3–4 (emphasis original and added).

■ Wilson's argument is offered without citing any legal authority. The Agreement is clear as to the covenants undertaken by Wilson for the benefit of CMI. There is, however, absolutely no provision which indicates that following the date of closing, CMI is obligated to conduct the affairs of WMS with an eye to maximizing the contingent profit expected by Wilson. Specifically, the provision for contingent payment starts with the contingent preposition, "When and *if earned*, the Purchaser will pay to Seller ... contingent additional payments...." Agreement at § 1.2(d) (emphasis added), attached to # 54 as Exhibit A. If the parties to the Agreement had wished to restrict CMI's conduct of WMS affairs following the acquisition, they should have so provided in the Agreement.

The Nevada courts have declined to interpret contracts so as to modify or create a new one. *Mohr Park Manor, Inc. v.*

*Mohr,* 83 Nev. 107, 424 P.2d 101 (1967), appeal after remand, 87 Nev. 520, 490 P.2d 217 (1971). Consequently, this Court is not at liberty to revise the Agreement while professing to construe it. In Nevada, courts have no power to create a new contract which the parties themselves have not created. *Old Aztec Mine, Inc. v. Brown,* 97 Nev. 49, 623 P.2d 981 (1981). While Wilson asserts that this Court should infer a post-acquisition duty from CMI to Wilson, in interpreting a contract, in Nevada, courts should ascertain the intent of the parties from the language of the contract. *Kroeger v. King,* 746 P.2d 630 (Nev.1987).[2]

Wilson may have had an inchoate intention to secure maximum contingent payments following CMI's acquisition of WMS. Nevertheless, whatever might have been the intention of Wilson, a reading of the unambiguous terms of the Agreement shows that there is no reciprocal covenant on the part of CMI in favor of Wilson. Accordingly, Wilson's First Counterclaim fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### SIXTH COUNTERCLAIM FAILS:

### NO CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In support of its assertion of an implied covenant of good faith and fair dealing, Wilson argues that *every* contract includes such an implied covenant. The Nevada Supreme Court, however, has implied a covenant of good faith and fair dealing only in special circumstances. These arise "mainly ... in contractual relations which involve a special element of reliance such as that found in partnership, insurance, and franchise agreements.... [or] where one party has traditionally held vastly superior bargaining power—the termination of a salesperson's 'at will' employment contract."

---

**2.** In *Hotel Riviera, Inc. v. Torres,* 97 Nev. 399, 632 P.2d 1155, 1157 (1981), the Nevada Supreme Court quoted none other than Oliver Wendel Holmes in limiting judicial review of an unambiguous contract:

"[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs,—not on the parties' having *meant* the same thing but on their having *said* the same thing." Quoting Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457, 464 (1897).

*Aluevich v. Harrah's,* 99 Nev. 215, 660 P.2d 986, 987 (1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 998, 79 L.Ed.2d 230 (1984).[3]

It is telling that in its Opposition to Dismiss, Wilson relies on a decision of the Nevada Federal District Court which in turn, cites Justice Springer's *dissent* in *Aluevich,* as support for its argument that Nevada recognizes a cause of action for the implied covenant in all commercial contracts. *Candelaria Industries, Inc. v. Occidental Petroleum Corp.,* 662 F.Supp. 1002, 1006 (D.Nev.1984). This reliance is misplaced. In decisions subsequent to *Aluevich,* the Nevada Supreme Court has reaffirmed its narrow application of the implied covenant of good faith and fair dealing. *E.g., Overhead Door of Reno v. Overhead Door,* 734 P.2d 1233, 1235 (Nev. 1987); *Dalton Properties, Inc. v. Jones,* 100 Nev. 422, 683 P.2d 30, 31 (1984).

■ In the context of this action, Nevada law recognizes no implied covenant of good faith and fair dealing. Thus, under no state of facts as pleaded could Wilson recover from CMI, and Wilson's Sixth Counterclaim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### SEVENTH COUNTERCLAIM PROPERLY PLEADED UNDER RULE 9(b)

Wilson's Seventh Counterclaim alleges: Counterclaimants/Third–Party Plaintiffs are informed, believe and thereupon allege that CMI improperly recorded losses from other companies in the Business' records in an intentional effort to misrepresent the Business' earnings so as to defraud Counterclaimants/Third–Party Plaintiffs of their rights to a share of the Business' profits.

Plaintiffs relied on this intentional misrepresentation in that they failed to receive any profit from the operation as they otherwise would have received.

#16 at 17, ¶¶ 49–50.

In a diversity action such as this, the pleading requirements of Fed.R.Civ.P. 9(b) are applicable. 5 Wright & Miller, *Fed. Prac. & Pro.* § 1297 (1969). Rule 9(b) states:

> "... In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

While the rule requires the complainant to set out the *circumstances* constituting fraud with particularity, it does not require the complainant to state the *evidentiary facts* constituting fraud with particularity. *Id.* at § 1298.

The nature of the individual case necessarily determines how much particularity is appropriate. A Nevada Federal District Court decision has noted that, "[a] nit-picking approach is frowned on in making such determination." *Arroyo v. Wheat,* 591 F.Supp. 136, 139 (D.Nev.1984), citing *Gottreich v. San Francisco Inv. Co.,* 552 F.2d 866, 867 (9th Cir.1977). It is well settled that a pleading's allegation of fraud is sufficient if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987); 5 Wright & Miller, *Fed.Prac. & Pro.* § 1297 (1969).

■ This Court holds that Wilson's Seventh Counterclaim adequately serves Rule 9(b)'s purpose by apprising CMI of the claim against it and of the acts relied upon as constituting the fraud charged. This Court is cognizant, moreover, that allegations of fraud based on information and belief (as are Wilson's) usually do not satisfy the degree of particularity required under Rule 9(b). Nevertheless, this Court is satisfied that since Wilson is alleging that CMI committed fraud in its corporate capacity, the recognized exception applies,

---

**3.** Moreover, not all breaches of the contractual covenant of good faith and fair dealing reach to the level of a breach in *tort.* "A tort ... requires the presence of a duty created by law, not merely duty created by contract; and although a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability." *K Mart Corp. v. Ponsock,* 732 P.2d 1364, 1370 (Nev.1987).

since Wilson cannot be expected to have personal knowledge of the facts constituting CMI's alleged record keeping misrepresentations. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987), citing *inter alia, Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982).

Accordingly, CMI's arguments for dismissal for failure to assert and plead specific facts of fraud must be rejected. Wilson's Seventh Counterclaim meets the pleading requirements of Fed.R.Civ.P. 9(b).

IT IS THEREFORE ORDERED that Plaintiff/Counterdefendant CMI's Motion to Dismiss (# 54), pursuant to Fed.R.Civ.P. 12(b)(6) regarding Defendant/Counterplaintiff Wilson's First and Sixth Counterclaims is GRANTED;

IT IS FURTHER ORDERED that Plaintiff/Counterdefendant CMI's Motion to Dismiss (# 54) regarding Defendant/Counterplaintiff Wilson's Seventh Counterclaim is DENIED.