PREMIERE DIGITAL ACCESS, INC., Plaintiff,

v.

CENTRAL TELEPHONE COMPANY, John Does I–X, and Roe Corporations XI–XX, Defendants.

No. CV–S–02–1015–DAE–(PAL).

United States District Court, D. Nevada.

Feb. 22, 2005.

Barry Levinson, Barry Levinson, Law Office Of, Kristian Johnson, Barry Levinson, Law Office Of, Las Vegas, for Plaintiff Premiere Digital Access, Inc.

Elissa Cadish, Hale Lane Peek, et al, Michelle Allison, Hale Lane Peek, et al, Las Vegas, for Defendant Central Telephone Company.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, Chief District Judge.

The Court heard Defendant Central Telephone Company's motion on December 15, 2004. Kristian Johnson, Esq., appeared at the hearing on behalf of Plaintiff Premiere Digital Access, Inc.; Elissa Cadish, Esq., appeared at the hearing on behalf of Defendant Central Telephone Company. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART Defendant Central Telephone Company's motion for summary judgment.

## BACKGROUND

Plaintiff Premiere Digital Access, Inc., ("Premiere") is suing Defendant Central Telephone Company d/b/a/ Sprint of Nevada ("Sprint") for breach of contract, violation of the covenant of good faith and fair dealing, restraint of trade, and unconscionable contract. This case is before the Court pursuant to 28 U.S.C. § 1332. Plaintiff Premiere is a Nevada Corporation; Defendant Sprint is a foreign corporation. Plaintiff seeks damages and injunctive relief.

Plaintiff Premiere is an internet service provider ("ISP") that had, prior to Plaintiff's dispute with Defendant, 800 third party customers who paid Plaintiff to provide them with internet access and services. On April 17, 2002, Plaintiff entered into an agreement with Defendant Sprint in which Sprint agreed to provide Premiere with circuits, phone lines, trunk lines, and phone or IP assignments—services which were essential to the running of Plaintiff's business.

Incorporated into this contract was Sprint's Acceptable Use Policy ("AUP"). The AUP prohibited Premiere or its customers from engaging in a list of uses, including "[p]roviding material that is, in the sole opinion of Sprint, threatening or harassing, profane, abusive, libelous, socially objectionable, unlawful, discriminatory, offensive, or protected by trade secrets." In the case of a violation, the AUP stated:

> Sprint reserves the right to remove content from its servers that, in Sprint's sole discretion, is in violation of this Policy. If activity in violation of this policy continues, then Sprint may suspend or terminate without notice Customer's Sprint Web Hosting Service, as Sprint deems necessary to prevent further violations.

In another section of the contract, entitled "Default/Termination," another passage regarding termination of services reads: " 'Default' shall mean ... fail[ure] within fourteen (14) days after written notice to remedy any breach of these terms and conditions. Upon Default by Customer, Sprint may terminate the services under this Agreement."

Defendant Sprint maintains that it received numerous complaints regarding three customers of Premiere—bulkers.net, bulkbarn.com, and web-promotions.com; the complaints indicated that these web sites were promoting methods of transmitting bulk junk e-mail. Sprint claims that prior to this period, it had already addressed the problems regarding these web sites with Premiere, at a time when Premiere was an indirect customer of Sprint by way of another provider. During their previous discussions, Sprint claims it specifically warned Premiere that the sites, as well as any others that sell bulk e-mail software of e-mailing lists, would be terminated. In July of 2002, Sprint states that it again contacted Premiere seeking a remedy to the problem of these three web sites. After Premiere failed to comply, Sprint terminated service to these sites. Premiere protested the termination.

Sprint asserts, however, that the complaints did not end with the termination of service to these sites, as Premiere customers continued to engage in prohibited practices, such as "spamming" and "spoofing" (the practice of forging e-mail header information to hide the source of the e-mail). On July 25, 2002, Sprint forwarded a "Three Day Termination Notice" letter to Premiere via certified mail, citing violations of the AUP. On July 29, 2002, Sprint terminated all services to Premiere.

Premiere claims that after Sprint terminated its services, Premiere's ISP business was completely shut down and all its clients have been lost. Premiere denies that its customers violated Sprint's AUP. Regardless, Premiere also contends that, even if its customers had engaged in prohibited practices, Sprint violated the contract by not giving Premiere fourteen days notice, during which time it could have remedied the problem. Plaintiff filed suit against Sprint on July 30, 2002.

Plaintiff's complaint seeks damages for breach of contract, violation of the covenant of good faith and fair dealing, trade restraint, and unconscionable contract. Plaintiff also seeks injunctive relief to force Sprint to resume providing services to Premiere. More specifically, Plaintiff asserts that, by terminating its service without 14 days written notice, Sprint has breached the contract. Plaintiff also argues that none of the violations on which Sprint premised termination ever occurred. To state a claim for violation of covenant of good faith and fair dealing, Plaintiff maintains there was a "special relationship" between Plaintiff and Defendant, and that Defendant's actions were "oppressive, wanton and willful." In support of its claim for restraint of trade, Premiere alleges that Sprint has completely eliminated its competition in the business of supplying ISPs with line access and equipment within the Las Vegas/Clark County area, and that Defendant now engages in monopolistic and unilateral practices. In arguing that the contract between Sprint and Premiere was unconscionable, Premiere alleges that Defendant refuses to negotiate regarding contract terms, and because of Defendant's monopolistic hold on the market, it forces ISPs to accept limitations on liability and damages that are "shocking."

On June 9, 2003, Defendant Sprint filed a motion for summary judgment on all of Premiere's claims. Premiere filed its opposition to Sprint's motion on June 24, and filed a further supplement to this opposi-

tion on September 12. Sprint filed a reply in support of its motion on September 26.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

I. *Sprint's Motion for Summary Judgment on Premiere's Breach of Contract claim must be DENIED, because Premiere has raised issues of fact as to whether Sprint had cause to terminate Premiere's service under the contract's terms.*

█ As regarding Premiere's cause of action for breach of contract, Sprint argues that summary judgment must be granted because the contract plainly states that no notice is required prior to termination when a customer violates the AUP. The passage regarding "Default" cited by Premiere, Sprint argues, is meant only to deal with other kinds of violations, such a failure to timely pay as required by the contract. Thus, Sprint argues that, based on the plain meaning of the contract terms, it bore no duty to warn Premiere fourteen days prior to termination.

In its opposition to Defendant's motion for summary judgment, Plaintiff argues against this interpretation of the contract, and maintains that the contract required notice fourteen days prior to termination as well as an opportunity to cure. However, the Court finds no need to address whether or not the contract provisions can be construed as a matter of law on the issue of notice. This is because Plaintiff has borne the burden of bringing some evidence indicating a triable issue of fact regarding whether or not Sprint was justified in terminating service at all.

Indeed, Plaintiff has additionally argued that summary judgment is inappropriate, because Plaintiff's customers never engaged in prohibited activities that would have given Sprint grounds to end the contract. In support of this claim, Plaintiff has brought forth evidence indicating that Premiere's President personally investigated the claims that Premiere's customers were selling spamming software and spoofing, and found these claims to be untrue. (Zadravecz Decl., Pl.Ex. 1.) Because this evidence goes to the heart of whether or not Sprint's termination of Premiere's services was inappropriate, and hence a breach of contract, the Court finds that it creates a triable issue of material fact. Therefore, the Court DENIES Defendant's motion for summary judgment as regards to Plaintiff's claim for breach of contract.

II. *Sprint's Motion for Summary Judgment on Premiere's claim for injunctive relief must be DENIED, because Premiere has raised issues of fact sufficient to maintain its breach of contract claim.*

Sprint's motion for summary judgment also argues that Premiere's claim for injunctive relief must be denied. Sprint's argument is premised on the assertion that Plaintiff has not brought forth sufficient evidence to state a claim under any of its substantive causes of action, and therefore no basis for injunctive relief exists. However, this Court has held that Plaintiff's claim for breach of contract has survived the summary judgment phase and raised triable issues of fact. Therefore, the Court DENIES Defendant's motion for summary judgment as regards to Plaintiff's claim for injunctive relief.

III. *Sprint's Motion for Summary Judgment on Premiere's good faith and fair dealing complaint is GRANTED, because no "special relationship" existed between Sprint and Premiere as required by Nevada law.*

Defendant also seeks summary judgment on Plaintiff Premiere's third cause of action, which seeks damages, including exemplary damages, for violation of the covenant of good faith and fair dealing. Specifically, Plaintiff's complaint alleges: "Defendant Sprint at all times knew that Plaintiff would be entered into contracts with individual and corporate third parties to be their ISP provider... [t]herefore there is a special relationship between Plaintiff and Defendant." (Pl. Compl. at 44–45.) Defendant Sprint argues in its motion for summary judgment, however, that Premiere has failed to demonstrate any such special relationship exists between "two commercial entities who entered into a contract for commercial equipment and services." (Def. Mot. for Sum. Judg. at 11.)

Although under Nevada law every contract gives rise to an implied covenant of good faith and fair dealing, a tort claim for breach of this implied covenant is only allowed under "special circumstances." *Cincinnati Microwave, Inc., v. Wilson,* 705 F.Supp. 1453, 1456 (D.Nev.1989). "A tort ... requires the presence of a duty created by law, not merely duty created by contract; and although a duty of good faith and fair dealing is created by law in all cases, it is only in rare and exceptional cases that the duty is of such a nature as to give rise to tort liability." *K Mart v. Ponsock,* 103 Nev. 39, 732 P.2d 1364, 1370 (1987). The tort is generally limited to contractual relationships that involve an unusual element of reliance by one party on the other. *Cincinnati Microwave,* 705 F.Supp. at 1456. These relationships include those found in partnerships, insurance contracts, franchise agreements, and between employers and employees. *Id.*

In support of its claim that a special relationship exists, Premiere cites a case in which the Nevada Supreme Court found the requisite relationship existed between an employer and its employees. (Pl. Opp. at 20 (citing *K Mart,* 103 Nev. 39, 732 P.2d 1364).) The Court finds that this case is simply not analogous to the case at hand. Plaintiff also cites a Nevada Supreme Court case for the proposition that the tort will be recognizes in breaches of contract "which involve a special element of reliance such as that found in a partnership, insurance, and franchise agreements ... [or] where one party has traditionally held vastly superior bargaining power." (Pl. Opp. at 20 (citing *Aluevich v. Harrah's,* 99 Nev. 215, 217–218, 660 P.2d 986 (1983)).) However, in that case, the Nevada Supreme Court rejected the claim of the plaintiff, a lessee, that an implied covenant of good faith and fair dealing had been

breached. The court found that where the parties were experienced businesspersons, this special element of reliance was not present. *Aluevich,* 99 Nev. at 218, 660 P.2d 986. This Court finds that *Aluevich* lends no support to Plaintiff's argument. Rather, this Court accepts Sprints argument that this arms-length contract between commercial entities does not entail the kind of special relationship necessary to support a claim for breach of the implied covenant of good faith and fair dealing. To hold otherwise would be a significant step toward making this "exceptional" covenant the rule—a result that was clearly not intended by the Nevada Supreme Court when it announced this narrow cause of action. Thus, the Court GRANTS Defendant's Motion for Summary Judgment as regards to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

IV. *Sprint's Motion for Summary Judgment on Premiere's restraint of trade cause of action is GRANTED, because the U.S. Supreme Court has made clear that access to an essential facility is not unavailable where a regulatory scheme exists to force an incumbent carrier to provide competitors with access to such facilities.*

■ Plaintiff's fourth cause of action alleges that Defendant Sprint monopolized the supplies and line access required by ISPs in Clark County, and has engaged in monopolistic and unilateral activity in violation of 15 U.S.C. § 1 et seq. Plaintiff's supplement to its opposition to Defendant's motion for summary judgment clarifies that it bases its allegations on the "essential facilities doctrine." The Ninth

Circuit has defined the essential facilities doctrine to mean that "a company which has monopoly power over an essential facility may not refuse to make the facility available to others where there is no legitimate business reason for the refusal." *City of Anaheim v. Southern California Edison Co.,* 955 F.2d 1373, 1379 (9th Cir. 1992). The goal of the doctrine is to prevent a monopolist from misusing an essential facility to "extend monopoly power from one stage of production to another, and from one market into another." *Id.* (citing *MCI Communications Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1132 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983)).

The Court notes that both parties have based their arguments on a Ninth Circuit opinion that has since been vacated by the U.S. Supreme Court. (Pl. Supp. to. Opp. at 11–15 (citing *MetroNet Services Corp. v. U.S. West Communications,* 329 F.3d 986 (9th Cir.2003) (vacated by *Qwest Corp. v. MetroNet Services Corp.,* 540 U.S. 1147, 124 S.Ct. 1144, 157 L.Ed.2d 1040 (2004))).) On remand from the Supreme Court, the Ninth Circuit enunciated the following elements for a claim under the essential facilities doctrine:

(1) that Defendant is a monopolist in control of an essential facility,

(2) that Plaintiff, as Defendant's competitor, is unable reasonably or practically to duplicate the facility,

(3) that Defendant has refused to provide Plaintiff access to the facility, and

(4) that it is feasible for Defendant to provide such access.

*MetroNet Services Corp. v. Qwest Corp.,* 383 F.3d 1124, 1128–29 (9th Cir.2004).[1]

---

1. The Ninth Circuit's original decision in *Metronet,* 329 F.3d 986, was vacated by the United States Supreme Court and remanded to the Ninth Circuit for further consideration in light of the Supreme Court's intervening deci-

sion in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004). In *Verizon,* the Supreme Court made clear that it

The Ninth Circuit has explained that the first and second elements are effectively components of the definition of an "essential facility." *City of Anaheim*, 955 F.2d at 1380 ("[I]f the facility can be reasonably or practically duplicated it is highly unlikely, even impossible, that it will be found to be essential at all."). Moreover, the fourth element simply incorporates the question of whether there is a legitimate business justification for the refusal to provide the facility. *Id.*

Therefore, when applying the essential facilities doctrine, the first inquiry is necessarily whether the facility is essential. In this jurisdiction, an "essential facility" is defined as "facility [that] carries with it the power to *eliminate* competition in the downstream market." *Id.* at 1380 (emphasis in original) (citing *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir.1991)). This power must be permanent in duration. *Alaska Airlines*, 948 F.2d at 544 n. 11.

Plaintiff has brought forth evidence in the form of an affidavit, a letter, deposition testimony, and an interrogatory response to support the following assertions: that Sprint controlled all PRI trunk facilities in Clark County, Nevada; that these facilities were necessary to Premiere's business and could not be duplicated because all service providers used Sprint's facilities; that Sprint had denied use of its facilities and threatened a similar denial in the future; and, that it is feasible for Sprint to provide the access. (Watkins Aff., Pl. Ex. 10; Def. Resp. to Pl. Interrog. No. 22; Holzapfel Depo. at 42:3–22, 44:17–45:11; Letter of July 25, 2002, Pl. Ex. 9.)

These facts do not prove a lack of access to an essential facility as defined by the Supreme Court. The Supreme Court noted in *Verizon Communications, Inc. v.*

*Law Offices of Curtis V. Trinko, LLP*, "the indispensable requirement for invoking the doctrine is the unavailability of access to the 'essential facilities.'" 540 U.S. 398, 411, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004). However, the Court explained that where a regulatory scheme existed that required an incumbent provider to share its facilities with competitors, a competitor cannot claim a lack of access. Thus, the Court held that "essential facility claims should ... be denied where a state or federal agency has effective power to compel sharing and to regulate its scope and terms." *Id.* (citing P. Areeda & H. Hovenkamp, Antitrust Law, p. 150, ¶ 773e (2003 Supp.)).

Based on this holding, the Ninth Circuit dismissed a Sherman Act claim premised on the essential facilities doctrine where access to the incumbent carrier's facilities was provided to competitors under the requirements of a state regulatory body. In *Metronet Services Corp. v. Qwest Corp.*, a company engaged in the reselling of telecommunications services sued the incumbent local exchange carrier, alleging, among other claims, a violation of the Sherman Act under the essential facilities doctrine. 383 F.3d at 1127–28. Access to the facilities was regulated by the Washington Utilities and Transportation Commission. *Id.* The Ninth Circuit held that, in light of *Verizon*, the plaintiff could not show a lack of access due to the existence of a state regulatory scheme that provided a means for competitors to force access to the facilities. *Id.* at 1129.

In this case, the record shows that Defendant Sprint is an incumbent provider of local telephone services, and as such, is required by the Nevada Public Utilities Commission to provide access to its trunk lines and other facilities to duly authorized

had neither recognized nor repudiated the essential facilities doctrine; the Court declined to reach that issue in *Verizon*, because

it held that even under the essential facilities doctrine, the claim would fail. 540 U.S. at 410–411, 124 S.Ct. 872.

competitors pursuant to the tariffs on file with the state commission. (*See* Def. Opp'n to Pl. Mot. for TRO at 2; Order of August 20, 2002, at 3; Watkins Decl. at 1–2.) It is clear, therefore, that under the Supreme Court's holding in *Verizon* and the Ninth Circuit's holding in *Metronet*, Plaintiff cannot show a denial of access that would be actionable under the essential facilities doctrine. Thus, because Plaintiff cannot prove a lack of access to an essential facility, Defendant's Motion for Summary Judgment on Premiere's restraint of trade cause of action is GRANTED.

V. *Sprint's Motion for Summary Judgment on Premiere's "unconscionable contract" cause of action is GRANTED, because unconscionability is not properly raised as a cause of action for damages, but either as an argument against Defendant's affirmative defense, or in a complaint for declaratory relief.*

 Plaintiff's fifth cause of action, labeled "unconscionable contract," asserts that the terms of the contract between Plaintiff and Defendant are unconscionable and therefore the limitation on liability provisions should not be enforced. Significantly, the only relief Plaintiff seeks is in the form of monetary damages and an injunction reconnecting Plaintiff's services. As Defendant notes, unconscionability is traditionally raised in one of two ways: either as a defense to the enforcement of a contract term, or by a plaintiff seeking a declaratory judgment as to the enforceability of a contract term. Indeed, this Court is aware of no case under Nevada law in which a plaintiff not seeking declaratory judgment has raised a "cause of action" of unconscionability in its complaint, and nor does Plaintiff direct this Court to any such case in response to Defendant's argument. In the instant case, Defendant has raised in its answer the affirmative defense of the limitation of liability provisions. As such, Plaintiff's argument of unconscionability will be more properly raised in its response to this defense, and not as one of the causes of action for which its seeks monetary damages and injunctive relief. The Court clarifies, however, that this ruling has no impact on Plaintiff's ability to raise the argument of unconscionability to rebut Defendant's affirmative defense. Thus, Defendant's motion for summary judgment is GRANTED with respect to the "unconscionable contract" cause of action.

*CONCLUSION*

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendant Central Telephone Company's Motion for Summary Judgment.

IT IS SO ORDERED.